A01A1774. MINDIS ACQUISITION CORPORATION v. BDO SEIDMAN, LLP.
A01A1775. BDO SEIDMAN, LLP v. MINDIS ACQUISITION CORPORATION et al.
(559 SE2d 111)

BARNES, Judge.

In Case No. A01A1774, Mindis Acquisition Corporation ("Mindis Acquisition") appeals the grant of judgment notwithstanding the verdict ("j.n.o.v.") to BDO Seidman, LLP ("BDO Seidman"), after a jury awarded $44 million to Mindis Acquisition on its claim against BDO Seidman for negligent representation. In Case No. A01A1775, BDO Seidman cross-appeals, contending the trial court erred by receiving evidence on and allowing the jury to consider an improper measure of damages and also contending the trial court erred by granting summary judgment to Jonathan Imerman and Thomas B. Hamil on BDO Seidman's third-party claim against them for indemnification because they allegedly supplied incorrect information to BDO Seidman during an audit.

Imerman and Byron Kopman started a scrap metal recycling business called Mindis in 1987. Although they sold the company to Attwoods plc ("Attwoods") for $18 million in 1989, they remained active in the operation of the company as officers and directors of Attwoods's subsidiary, Mindis Consolidated Corporation ("Mindis"), a scrap metal recycling company. In 1993, Imerman, through his company Celtic Holdings, Kopman, through his company Robust Holdings, and Joseph Lewis, through his company Bellamy, Inc., organized Mindis Acquisition to purchase Mindis from Attwoods through a stock purchase. Bellamy, Inc. initially owned 50 percent of Mindis Acquisition and later acquired controlling interest in the company by

investing an additional $10 million.

This litigation arose after Mindis Acquisition's purchase from Attwoods of Mindis's outstanding stock. BDO Seidman was the accounting firm hired by Attwoods to perform Mindis's annual inventory audit in 1993. BDO Seidman's final audit opinion estimated Mindis's metal inventory to be worth approximately $86 million on July 31, 1993. While conducting the audit, BDO Seidman was aware that Mindis Acquisition was negotiating the purchase of Mindis and was careful to make sure that Imerman did not undervalue the inventory so Mindis Acquisition would get a better bargain. In fact, the record shows that Imerman and others had significant and continuing doubts about whether the value of Mindis's scrap metal inventory could be determined accurately by anyone.

While the purchase and sale of Mindis's stock were in final negotiations, Mindis's Chief Financial Officer ("CFO"), Hamil, informed the BDO Seidman manager in charge of the Mindis audit that an outside shareholder of Mindis Acquisition had requested "comfort" in connection with the proposed acquisition. Specifically, Hamil said that Mindis Acquisition's outside shareholder sought assurance that there would be no material adjustments to the July 1993 financial statements, and Hamil asked the BDO Seidman manager for something he could give the majority shareholder to comfort him so they could proceed with the transaction. Hamil recalled that the BDO Seidman manager asked for some time to determine what could be provided and then responded with the audit opinion. BDO Seidman faxed the audit opinion to Hamil who then passed it on to Jeffrey Voss, who represented Bellamy, Inc., Mindis Acquisition's majority stockholder. Later that day, Voss authorized Kopman to execute the stock purchase agreement. After the purchase, an audit by another accounting firm revealed that Mindis's scrap metal inventory was worth only $16 million, some $70 million less than the BDO Seidman audit had reported only three months earlier. A subsequent audit confirmed the accuracy of this figure.

Subsequently, Mindis Acquisition filed this lawsuit against BDO Seidman for negligent misrepresentation. BDO Seidman then asserted third-party claims for indemnification and contribution against the Mindis Chief Executive Officer ("CEO"), Imerman, and CFO, Hamil. Before trial, the parties filed cross-motions for summary judgment on numerous issues. The trial court determined that whether Mindis Acquisition justifiably relied on BDO Seidman's opinion was a question for the jury, and this court denied BDO Seidman's application for an interlocutory appeal. The trial court, however, granted summary judgment to Imerman and Hamil on BDO Seidman's claims against them for indemnification.

The case was tried, and the jury returned a verdict of $44 million

in favor of Mindis Acquisition. Subsequently, however, the trial court granted BDO Seidman's motion for j.n.o.v.[1]

### Case No. A01A1774

Mindis Acquisition appeals the trial court's grant of a j.n.o.v. to BDO Seidman. The negligent misrepresentation claim is based on our Supreme Court's decisions in *Badische Corp. v. Caylor*, 257 Ga. 131, 132-133 (356 SE2d 198) (1987), and *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983).

In *Badische Corp.*, the Supreme Court set out the following guidelines under which a professional could be liable to a third party:

> This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach.

(Emphasis omitted.) Id. at 133. In this case, BDO Seidman knew that it was providing its audit opinion to provide assurance to the majority stockholder, and therefore, it provided the information specifically to induce the decision of a third party. It is undisputed that the information prepared by BDO Seidman was provided to a third party for the purpose of inducing that party to go forward with the transaction. Accordingly, Mindis Acquisition was within the limited class of persons BDO Seidman knew would rely on information it prepared.

At trial, BDO Seidman contended that Mindis Acquisition could not justifiably rely upon its opinion because two of Mindis Acquisition's shareholders, Imerman and Kopman, had been owners and officers of Mindis before Attwoods bought the company and continued as officers of Mindis after the purchase, and, therefore, they knew what the company was really worth regardless of BDO Seidman's evaluation. BDO Seidman contends that Imerman and Kopman had independent knowledge of the inventory value, knew the BDO Seidman inventories were inaccurate, and gave this infor-

---

[1] Although the trial court treated the motion as a renewed motion for a directed verdict, in accordance with OCGA § 9-11-50 (b) we are treating the trial court's action as the grant of a j.n.o.v.

mation to Mindis Acquisition. Thus, BDO Seidman contended, Mindis Acquisition did not justifiably rely on BDO Seidman's opinion.

Relying on this theory, BDO Seidman first moved for a directed verdict and, when the trial court deferred ruling, renewed the motion after the verdict awarding $44 million to Mindis Acquisition. The trial court then granted BDO Seidman's motion.

The trial court found that

> the evidence did not support a finding of justifiable reliance by the plaintiff. . . . The knowledge of Imerman and Kopman as officers [in] the company was attributable to [Mindis Acquisition], and, therefore, [Mindis Acquisition] was not justified as a matter of law in relying on [BDO Seidman's] representation that the financial statements containing the $86 million inventory figure were fairly stated.

Mindis Acquisition appeals that judgment and also appeals the trial court's denial of its motion seeking prejudgment interest under the Unliquidated Damages Interest Act, OCGA § 51-12-14.

1. When reviewing a trial court's ruling on a motion for a directed verdict or a motion for j.n.o.v., an appellate court must consider the evidence and resolve any doubt or ambiguity in favor of the verdict. A directed verdict or j.n.o.v. "is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict." (Citations and punctuation omitted; emphasis in original.) *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (1) (392 SE2d 268) (1990).

Further, j.n.o.v.

> may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts.

(Citation and punctuation omitted.) *Denson v. City of Atlanta*, 202 Ga. App. 325, 326 (1) (414 SE2d 312) (1991). In ruling on such a motion the trial court is not authorized to weigh the evidence or decide issues of fact. *Moore v. American Suzuki Motor Corp.*, 203 Ga. App. 189 (1) (416 SE2d 807) (1992).

Additionally,

> [a] judgment notwithstanding the verdict may not be granted because the strength or weight of the evidence is on one side. Moreover, even if the facts in a case are entirely uncontradicted and uncontroverted, where there is room for difference of opinion between reasonable men as to whether [an inference should be drawn], the right to draw the inference is peculiarly within the exclusive province of the jury.

(Citations and punctuation omitted.) *Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644, 647 (522 SE2d 467) (1999). Although the evidence that Imerman strongly questioned the inventory value could support a verdict for BDO Seidman based on a lack of justifiable reliance, the existence of that evidence is not a sufficient basis for directing a verdict to BDO Seidman. A sufficient basis for granting the motion would exist only if no evidence of any kind supported Mindis Acquisition's position. *Moore v. American Suzuki Motor Corp.*, supra, 203 Ga. App. at 190 (1).

We cannot agree that the evidence in this case meets that test because the record on appeal also shows that the actual decision maker, Voss, acting for Lewis, and Bellamy, Inc., Mindis Acquisition's majority owner, sought the information supplied by BDO Seidman before agreeing to go forward with the purchase. Voss testified that without the opinion he would not have signed the agreement. Consequently, some evidence exists from which the jury could conclude that Voss relied upon BDO Seidman's audit opinion rather than the evaluations of the others, including Imerman.

Therefore, because this is not a plain and undisputable case, the question of whether Mindis Acquisition should have protected itself by the exercise of further diligence was for the jury to decide. *American Petroleum Products v. Mom & Pop Stores*, 231 Ga. App. 1, 6 (2) (497 SE2d 616) (1998). The jury considered all the evidence and found for Mindis Acquisition. Implicit in the verdict is the jury's finding that Mindis Acquisition reasonably relied on BDO Seidman's opinion on the value of the scrap metal inventory, even though questions were raised about BDO Seidman's opinion on the value. As some evidence supports this result, the trial court erred by granting judgment to BDO Seidman.

Accordingly, the trial court's grant of j.n.o.v. under OCGA § 9-11-50 (b) must be reversed and the case remanded to the trial court with direction to enter judgment for Mindis Acquisition in accordance with the jury's verdict.

2. Because we have reversed the judgment in favor of BDO Seidman, we must vacate the trial court's ruling on Mindis Acquisition's

motion for prejudgment interest and direct the trial court to consider on remand whether an award of prejudgment interest under OCGA § 51-12-14 is appropriate.

### Case No. A01A1775

BDO Seidman contends in its cross-appeal that the trial court erred by granting summary judgment to Mindis CEO Imerman and Mindis CFO Hamil on its third-party indemnification claims against them and also erred by receiving evidence on and submitting the case to the jury using the wrong measure of damages.

3. We reject Imerman and Hamil's argument that we lack jurisdiction to consider BDO Seidman's cross-appeal of the trial court's grant of summary judgment to them on BDO Seidman's claim for indemnification. "Direct appeals from orders granting partial or complete summary judgment may be taken either within 30 days of rendition of the judgment or after the rendition of the final judgment in the case." *Studdard v. Satcher, Chick &c., Inc.*, 217 Ga. App. 1, 2 (456 SE2d 71) (1995). Here, although years after the grant of summary judgment complained of, the appeal was taken within 30 days of the final judgment in the case, and thus the issue is properly before us.

The trial court, however, did not err by granting summary judgment to Imerman and Hamil on these claims. The trial court ruled that "[a]ssuming without deciding that the Mindis financial and inventory data was incorrect, BDO Seidman still produced no evidence or reasonable inferences from facts which indicate that either Imerman or Hamil knowingly compiled and disseminated false data to BDO Seidman."

The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991):

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All other disputes of fact are rendered immaterial. See, e.g., *Holiday Inns v. Newton*, 157 Ga. App.

436 (278 SE2d 85) (1981). A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

(Emphasis in original.) Id. Although BDO Seidman continues to argue that the testimony that Imerman and Hamil questioned the value BDO Seidman gave to the scrap metal inventory raised the possibility that they gave incorrect information to BDO Seidman, it points to no *specific evidence* giving rise to a triable issue on this point. Moreover, this argument disregards BDO Seidman's evidence that it did not credit Imerman and Hamil's information for fear that Imerman and Hamil would attempt to undervalue the inventory.

4. BDO Seidman contends in its cross-appeal against Mindis Acquisition that the trial court erred by denying its motion in limine to exclude what BDO Seidman describes as evidence related to contract-based "benefit of bargain" damages; by giving charges related to those damages; and by refusing to give BDO Seidman's charges on what it contends was the proper measure of damages. BDO Seidman asserts that Mindis Acquisition's theory of damages was that it was entitled to receive the benefit of its bargain with Attwoods, but that Mindis Acquisition's damages could be only its out-of-pocket losses as measured by the difference between the value of what it paid and the value of what it received. Under this theory, BDO Seidman contends the damages would be measured by the difference between the actual value of the scrap metal inventory and the amount Mindis Acquisition paid for Mindis.

Because all of BDO Seidman's arguments ultimately depend on what is the proper measure of damages in a negligent misrepresentation case, we first address that issue. In Georgia the measure of damages in a negligent misrepresentation action is not the "out-of-pocket" theory based on § 552B of the Restatement (Second) of Torts.

In *Robert & Co.*, supra, the Supreme Court of Georgia adopted § 552, Restatement, Torts 2d; however, this does not mean that it automatically adopted other subparts, the commentary, or explanations, which is a synthesis of what the reporter and commissioners believed to be the majority of states' position on such area of the law. The Supreme Court

did not adopt § 552B, nor has this Court. In *Advanced Drainage Systems v. Lowman*, 210 Ga. App. 731 (437 SE2d 604) (1993), this Court held that negligent misrepresentation was an exception to the Economic Loss Rule in tort cases.

*U. S. Fidelity &c. Co. v. Paul Assoc.*, 230 Ga. App. 243, 251 (8) (496 SE2d 283) (1998).

In *Robert & Co. v. Rhodes-Haverty Partnership*, supra, 250 Ga. 680, our Supreme Court held that an essential element of this cause of action was the actual economic loss proximately resulting from reliance on the negligent misrepresentation. *Hardaway Co. v. Parsons, Brinckerhoff &c., Inc.*, 267 Ga. 424, 426-427 (1) (479 SE2d 727) (1997).

A cause of action for negligent misrepresentation differs from the typical negligence cause of action because the damage resulting is economic, rather than physical harm or property damage. *Robert & Co. v. Rhodes-Haverty Partnership*, supra, 250 Ga. at 681. Therefore, we reject BDO Seidman's argument that we should look only to negligence cases for the proper measure of damages. Indeed, we find greater similarities between causes of action for fraud and for negligent misrepresentation, and we earlier held that "[t]he same principles apply to both fraud and negligent misrepresentation cases." *Hightower v. Century 21 &c. Realty*, 214 Ga. App. 522, 524 (2) (448 SE2d 271) (1994). Further, one commentator has stated that "the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." Adams & Adams, Ga. Law of Torts (2000 ed.), § 32-1. Accordingly, we look to the measure of damages in fraud cases for the proper measure of damages in cases like this one. In this case, we find that the measure of damages is the difference between the actual value of the company and the misrepresented value of the company. See *Bennett v. D. L. Claborn Buick, Inc.*, 202 Ga. App. 308 (414 SE2d 12) (1991).

Therefore, we find that the trial court did not err by instructing the jury that

For a negligent misrepresentation claim the plaintiff is to recover its actual damages. In this case the measure of Mindis Acquisition Corporation's damages is the amount necessary to place Mindis Acquisition Corporation in the position it would have been in had the Mindis Metals inventory balance opined on and represented by BDO Seidman been correct.

Applying this charge to the evidence, the jury's verdict would represent the difference between their assessment of the company's value with its actual scrap metal inventory and the company's value if the inventory had been as represented. Therefore, the trial court did not err by denying BDO Seidman's motion in limine and admitting evidence relevant to this measure of damages. Further, because on appeal BDO Seidman has not attacked the sufficiency of the evidence to support the verdict, we must assume the amount the jury awarded was correct.

In any event, we find that BDO Seidman's objection to the charge did not preserve the issue for appeal. In civil cases, exceptions or objections to charges must be made after the jury is charged and before the verdict; objections made at charging conferences before the charge is given do not preserve charging issues for appellate review. *Bruno v. Evans*, 200 Ga. App. 437, 441 (4) (408 SE2d 458) (1991); *Sims v. Johnson*, 185 Ga. App. 720 (365 SE2d 532) (1988). After the charge, BDO Seidman objected only to giving Mindis Acquisition's charge no. 27. Such an objection is not sufficient to preserve the issue on appeal. *Lissmore v. Kincade*, 188 Ga. App. 548, 551 (373 SE2d 819) (1988). The objection must be stated distinctly so that a reasonable trial judge could understand the nature of the objection and rule intelligently on the specific point. *Christiansen v. Robertson*, 237 Ga. 711, 712 (229 SE2d 472) (1976).

> [T]he objection must be unmistakable in its purport in directing the attention of the trial court to the claimed error and must be stated with sufficient particularity to leave no doubt as to the portion of the charge challenged or as to what the specific ground of challenge is. The grounds of error urged must fully apprise the court of the error committed and the correction needed to cure the error. We construe the statute [OCGA § 5-5-24 (a)] as placing the duty on counsel of exercising a high degree of clarity in objecting to charges.

(Citation and punctuation omitted.) *Stone v. Burell*, 161 Ga. App. 369 (2) (288 SE2d 636) (1982). Further, we reject BDO Seidman's invitation to consider the charge under OCGA § 5-5-24 (c) which allows us to consider substantial errors in the charge that were harmful as a matter of law, regardless of whether an objection was made below. To preserve the effectiveness of subsections (a) and (b), OCGA § 5-5-24 (c) must be strictly construed and applied only to prevent a gross miscarriage of justice. Thus, subsection (c) should be very rarely applied. *Widener v. Mitchell*, 137 Ga. App. 730, 731-732 (4) (224 SE2d 868) (1976); *Nathan v. Duncan*, 113 Ga. App. 630, 638 (6) (149 SE2d 383) (1966). This is not one of those situations.

As we have found no error in the charge actually given on the measure of damages, the trial court did not err by refusing to give the charge requested by BDO Seidman on this subject.

Accordingly, we find the errors enumerated by BDO Seidman in Case No. A01A1775 are without merit.

*Judgment reversed with direction in Case No. A01A1774. Judgment affirmed in Case No. A01A1775. Smith, P. J., and Phipps, J., concur.*

DECIDED JANUARY 18, 2002 — 

· *Alston & Bird, Oscar N. Persons, Theodore J. Sawicki, John H. Goselin II, Womble, Carlyle, Sandridge & Rice, Nisbet S. Kendrick III, Caroline B. Keller*, for Mindis Acquisition Corporation et al.

*Sutherland, Asbill & Brennan, Peter J. Anderson, Kristen J. Indermark, Rebecca L. Burnaugh*, for BDO Seidman, LLP.

