A07A2093. ATLANDO HOLDINGS, LLC v. BDO SEIDMAN, LLP.
(660 SE2d 463)

ADAMS, Judge.

Atlando Holdings, LLC f/k/a Mindis Acquisition Corporation (MAC)[1] sued the accounting firm of BDO Seidman, LLP for negligent misrepresentation in connection with MAC's 1993 purchase of Mindis Corporation. On appeal following a jury trial and a jury verdict for $44 million in favor of MAC (the 1999 trial), the Supreme Court of Georgia held that the trial court had used the wrong measure of damages. *BDO Seidman, LLP v. Mindis Acquisition Corp.*, 276 Ga. 311 (578 SE2d 400) (2003) (*Mindis II*). The case was then retried on

---

[1] In order to maintain some consistency with prior appellate opinions, we will refer to the plaintiff by its former name, abbreviated to MAC.

the issue of damages only (the 2005 trial), and the jury awarded MAC zero damages. MAC now appeals.

The underlying facts have been set forth by this Court in *Mindis Acquisition Corp. v. BDO Seidman, LLP,* 253 Ga. App. 360, 361 (559 SE2d 111) (2002) (*Mindis I*), rev'd in part, *Mindis II*, 276 Ga. at 311-312 (1) and our Supreme Court in *Mindis II* and will be repeated here only as necessary for the disposition of the issues before us. BDO Seidman performed an inventory audit on Mindis Corporation, a scrap metal recycling business, prior to its purchase by MAC in 1993. BDO issued a final audit opinion estimating Mindis' inventory to be worth approximately $86 million on July 31, 1993; on October 29, 1993, MAC paid $40 million and assumed $31 million in debt to purchase Mindis. However, subsequent audits by different accounting firms revealed that Mindis' inventory was worth only $16 million, $70 million less than BDO Seidman certified in its audit. *Mindis I,* 253 Ga. App. at 361.

In the prior appeal, this Court upheld the verdict for Mindis, but our Supreme Court reversed on the issue of the measure of damages that should have been applied, holding that the proper measure of damages in a negligent misrepresentation case is the out-of-pocket standard rather than the benefit-of-the-bargain calculation utilized in the 1999 trial. *Mindis II,* 276 Ga. at 311-312 (1). Under that measure:

> The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause, including (a) The difference between the value of what he has received in the transaction and its purchase price or other value given for it; and (b) Pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the representation.

(Citation omitted.) Id.

During the 2005 trial, MAC sought to recover $40 million under part (a) (hereinafter referred to as "direct damages"), on the basis "that Mindis had a net negative value (i.e. was not worth even a dollar)" at the time of purchase in 1993, and additional damages under part (b) (hereinafter referred to as "consequential damages") including $10 million related to losses it allegedly incurred before it discovered the inventory discrepancy, as well as damages related to losses it allegedly incurred after it discovered the inventory discrepancy (operating losses). In this appeal following the zero verdict, MAC contends the trial court twice erred by admitting irrelevant and

prejudicial evidence, by refusing to admit certain rebuttal evidence and by giving an erroneous charge to the jury.

1. MAC first contends the trial court erred by allowing BDO Seidman to introduce evidence that Regional Recycling, who purchased Mindis from MAC in 1998 for $7 million, sold Mindis for $65.5 million in 2005. MAC argues that the 2005 sale was not probative of the value of Mindis in 1993 because (1) the sale, which occurred 12 years after MAC purchased Mindis, was too remote; (2) the sale occurred after $32 million had been invested in Mindis for new equipment and capital improvements; and (3) there had been a radical upswing in the scrap metal market between 1993 and 2005. MAC argues the admission of this evidence was highly misleading and prejudicial as to the pivotal issue in this case — the value of Mindis at the time MAC purchased it in October 1993.

BDO Seidman argues that the 2005 sale was not used to show the value of Mindis in 1993; rather it was admitted to rebut MAC's experts' testimony that it should have liquidated Mindis on the date of purchase because Mindis was worth less than zero on that date. Additionally, BDO Seidman argues this evidence was admissible to show that MAC was not entitled to recover consequential damages because "[t]he Schnitzer sale revealed that the alleged $70 million loss . . . was due to poor management, and Mindis had intrinsic value sufficient to be sold for $65.5 million with different management." MAC argues, however, that using the 2005 sale to refute its contention that Mindis had a negative value at the time of purchase still "depend[s] on using that sale to infer Mindis' value in 1993" and that using the 2005 sale to show that Mindis could have been operated profitably with proper management during the time MAC owned it, "assumes that what Schnitzer Steel paid in 2005 is proper evidence of the value (or potential value) of Mindis in 1993-1998."

> An abuse of discretion is generally the only basis for overruling a trial court's judgment as to evidence's relevancy. [Cit.] The existence of such an abuse may be measured by weighing the challenged evidence's probative value against the risk that its admission misled the jury or created a substantial danger of unfair prejudice or confusion. [Cit.]

*Key v. Grant,* 238 Ga. App. 818, 819 (2) (520 SE2d 277) (1999).

Under this standard, we agree with MAC that the trial court abused its discretion by admitting evidence that Mindis was sold for $65.5 million in 2005. First, for the reasons MAC urges — remoteness, physical changes at Mindis and changes in market conditions — we find that this evidence was not relevant to establish the 1993 value of Mindis. "Evidence must relate to the questions being tried . . . and

bear upon them either directly or indirectly." OCGA § 24-2-1. Relevant evidence includes acts or circumstances which serve to elucidate or throw light upon a material issue. *Smith v. Saulsbury*, 286 Ga. App. 322 (649 SE2d 344) (2007). Thus, "[o]nly evidence which shows the value of the property on the [applicable] date is relevant and admissible." *Clayton County Bd. of Tax Assessors v. Lake Spivey Golf Club*, 207 Ga. App. 693, 694 (1) (428 SE2d 687) (1993). As our Supreme Court noted in *Bowden v. Achor*, 95 Ga. 243, 259 (22 SE 254) (1894), the value of land at time of trial

> cannot fairly throw light on the question of its value years before, especially where there has been a very great and rapid enhancement in the values of all lands in that vicinity. . . . Evidence of this kind is not only irrelevant, but may very seriously and unjustly [arouse] a prejudice in the minds of the jury.

See also *Ga. Power Co. v. Hinson*, 179 Ga. App. 263, 269 (5) (b) (346 SE2d 73) (1986) (trial court did not err by refusing to admit testimony of subsequent sale of property where sale occurred five years after relevant date, inventory was not included in sales price, and buildings had changed).[2]

Moreover, assuming this evidence had some probative value as to other issues in the case, we nevertheless find that the trial court abused its discretion by admitting the evidence. "[A]ll relevant evidence should be admitted . . . *unless* its probative value is substantially outweighed by the danger of unfair prejudice." (Emphasis supplied.) *Buckler v. DeKalb County Bd. of Tax Assessors*, 263 Ga. App. 305, 306 (1) (587 SE2d 797) (2003). In this case we find any possible relevance of the 2005 purchase price of Mindis was substantially outweighed by its potential to confuse, mislead and prejudice the jury concerning the value of the property at the time of the 1993 purchase. MAC is entitled to a new trial on this basis.

2. We will also address those enumerations of error that may recur upon retrial in this case.

MAC next contends that the trial court erred by admitting evidence that the loans from a shareholder to purchase and operate Mindis were later reclassified as a shareholder investment of capital and that the debt owed to the shareholder was forgiven in exchange

---

[2] It is pertinent to note that BDO Seidman could have presented expert testimony concerning the competency of MAC's management without any reference to the 2005 sale price. Likewise, evidence that Mindis was ultimately sold without an extensive environmental remediation, to the extent it was relevant to rebut MAC's contention that such a remediation was needed, could also be presented without reference to that price.

for the issuance of additional stock in the company. BDO Seidman contends that the evidence was properly admitted to show "the hollow nature of MAC's $10 million consequential damages claim," and it points to the stipulations and testimony at trial showing that the $10 million was an equity investment that was made *before* MAC purchased Mindis and which allowed that particular investor to become the majority shareholder. It also argues that this evidence showed that to the extent the $10 million was considered a "debt" it was never repaid and was forgiven in writing in return for this issuance of additional stock. BDO Seidman contends this evidence would authorize the jury to conclude that MAC did not incur a "pecuniary loss" and thus was not entitled to consequential damages under the relevant measure.

MAC argues that whether the money used to acquire and operate Mindis came from shareholder loans or shareholder investments is irrelevant to its right to recover. Moreover, MAC argues that this evidence was clearly prejudicial since the jury might believe that MAC was not entitled to either consequential *or* direct damages if it did not have to repay these loans. In support of this argument MAC points to BDO Seidman's closing argument where counsel made reference to the money loaned to both purchase and to operate the company: "MAC didn't tell you that MAC doesn't owe anybody any amount of money that it may have borrowed as it related to either *buying* the company [in 1993] or operating the company. *All* that has been forgiven. [MAC] didn't tell you any of that." (Emphasis supplied.)

At the outset we note that this evidence was irrelevant to the determination of whether MAC was entitled to direct damages, and BDO Seidman did not contend otherwise below or on appeal. Thus, any reference to the fact that MAC did not have to repay the funds used to *acquire* the company was improper as the jury might improperly conclude that MAC was not entitled to direct damages for this reason.

We cannot say, however, that this evidence did not have some probative value on the issue of consequential damages. As we read BDO Seidman's argument and glean from its examination of the witnesses below, it was attempting to show that the $10 million at issue was a shareholder investment made before MAC purchased Mindis and was not directly related to any operating losses allegedly arising from its negligence in undervaluing Mindis' inventory; instead the investment was made so that shareholder would become the majority shareholder. MAC, however, elicited testimony to show that whether the capital was classified as a loan to Mindis with an obligation to repay, or an equity investment by a shareholder, was

irrelevant since the money was needed and used to keep Mindis afloat. These were, in our opinion, issues of fact for the jury to resolve.

3. MAC also argues that the trial court erred by refusing to allow it to introduce prior testimony from Scott Hazy, BDO's lead audit manager, to rebut BDO's evidence and argument that its only negligence consisted of relying uncritically on inventory values supplied by Mindis' management. BDO contends, inter alia, that MAC waived this issue by failing to properly perfect the record because it did not seek to introduce the actual excerpts of the testimony from the 1999 trial[3] until after the 2005 trial was concluded and because it did not seek to timely amend its pretrial order to include this evidence.

Pretermitting whether this issue is properly before us for resolution, since the evidence upon retrial may vary, we need not decide the issue of whether the trial court abused its discretion by refusing to admit this rebuttal evidence.

4. Lastly, MAC assigns error to the portion of the trial court's charge instructing the jury that "[t]he damages do not include the benefit of Plaintiff's contract with defendant." MAC argues that this portion of the charge was confusing and inapplicable since there was no contract between the parties here. Although we agree with MAC that this charge was not strictly adjusted to the evidence and that upon retrial the trial court should omit any reference to a contract between the parties to avoid potential confusion by the jury, in light of our holding in Division 1, we need not decide if MAC is entitled to a new trial on the basis urged in this enumeration.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 28, 2008 — 

*Bondurant, Mixson & Elmore, Frank M. Lowrey IV*, for appellant.

*Sutherland, Asbill & Brennan, Peter J. Anderson, Gregory S. Smith, Keith J. Barnett*, for appellee.

---

[3] The transcript from the prior trial was forwarded to this Court with the present appeal.