A08A0950. PRICEWATERHOUSECOOPERS, LLP v. BASSETT.
(666 SE2d 721)

ELLINGTON, Judge.

A Cobb County jury returned a $10 million verdict in favor of William Bassett as the trustee for four private trusts in the trusts' claim for negligent misrepresentation against the accounting firm PricewaterhouseCoopers, LLP ("PwC"), as the successor to Coopers & Lybrand, LLP ("Coopers"). PwC appeals, contending the trial court erred in denying its motion for a directed verdict and for judgment notwithstanding the verdict. PwC argues that Bassett failed to offer any evidence on an essential element of the negligent misrepresentation claim, specifically, that he actually and justifiably relied on Coopers' alleged misrepresentations about the financial condition of a corporation in which the trusts invested. PwC further argues there was no evidence that Coopers' alleged fraud debarred or deterred Bassett from bringing the action within the statutory limitation period and, therefore, the action was untimely. For the reasons that follow, we affirm.

> [O]n appeal from a trial court's rulings on motions for directed verdict and judgment notwithstanding the verdict, we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments notwithstanding the verdict are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Citation and punctuation omitted.) *Fertility Technology Resources v. Lifetek Medical*, 282 Ga. App. 148, 149 (637 SE2d 844) (2006).[1]

Viewed in favor of the verdict, the evidence showed the following. Beginning in 1978, two brothers, Stiles A. Kellett, Jr., and

---

[1] See also OCGA § 9-11-50 (motions for directed verdict and judgment notwithstanding the verdict); *Mindis Acquisition Corp. v. BDO Seidman*, 253 Ga. App. 360, 364 (1) (559 SE2d 111) (2002) ("A sufficient basis for granting [a motion for a directed verdict or for a judgment notwithstanding the verdict] would exist only if no evidence of any kind supported" the

Samuel B. Kellett, built a business operating nursing homes. The Kelletts created an irrevocable trust for each of their children; each served as the trustee for the trusts of the other brother's children. The trust property consisted partly of stock in the Kelletts' business, Convalescent Services, Inc. ("CSI"). In the early 1990s, the Kelletts began investigating the possibility of taking CSI public or merging it with another company and became interested in Mariner Health Group, Inc., a publicly-traded company that focused on a more profitable sector of the market, subacute care. In January 1994, Stiles Kellett heard a presentation by representatives of Mariner and then met with Mariner's chief executive officer. During 1994, the Kelletts investigated Mariner's business practices and financial condition, including by hiring an investment banking firm to evaluate the company.

In December 1994, the Kelletts met with some of Mariner's executives and reviewed Mariner's public financial statements for 1991, 1992, and 1993, which Coopers had certified, along with quarterly and interim reports for 1994, which Coopers had reviewed. Coopers' opinion reports regarding Mariner's financial statements and notes were "unqualified," which means that the independent auditor had determined that the financial statements were free of material misstatements and were prepared according to generally accepted accounting principles. The Kelletts had a high level of confidence in Coopers' methods, based on their experience with Coopers as CSI's own accounting firm, and relied on those statements for material information about Mariner's financial condition. In January 1995, CSI and Mariner agreed to merge, and CSI's shareholders, including the Kelletts as trustees, signed a participation agreement. In June 1995, Bassett became the trustee of the four trusts for the Kelletts' children. The merger closed in January 1996. Along with other consideration, CSI's eight major shareholders (the Kelletts, the four trusts, and two other entities) received Mariner stock valued at $120 million in exchange for their CSI stock.

In 1998, Mariner was acquired by Paragon Health Network, Inc., and the trusts and other former CSI stockholders received stock in the new parent company, called Mariner Post Acute Network ("M-PAN"), in exchange for their Mariner stock. In 2000, M-PAN filed for bankruptcy, and its stock became worthless. In January 2002, Bassett learned (from the Kelletts, who learned it from Mariner's former attorneys) that, in the year between the signing of the purchasing agreement and the closing of the merger, Mariner

position of the party who secured the jury verdict.) (citation omitted), rev'd on other grounds, *BDO Seidman v. Mindis Acquisition Corp.*, 276 Ga. 311 (578 SE2d 400) (2003).

was having serious cash flow problems. In addition, the Kelletts and Bassett learned that Mariner had used misleading accounting practices to significantly overstate its revenue[2] and profitability in the three years leading up to the CSI-Mariner merger. Furthermore, Coopers had assisted Mariner's fraud by giving unqualified or "clean" auditor's opinions that endorsed Mariner's misleading financial statements. Bassett, on behalf of the trusts, along with the Kelletts and other former CSI stockholders, filed suit against PwC and certain individuals in September 2002, asserting claims for fraud, professional negligence, negligent misrepresentation, breach of fiduciary duty, and violations of Georgia RICO.[3]

At the close of the plaintiffs' evidence at trial, the trial court, with the plaintiffs' consent, granted PwC's motion for a directed verdict on the claim against it for breach of fiduciary duty. The trial court otherwise denied the defendants' motions for a directed verdict. When the trial court submitted the case to the jury, the verdict form included a special interrogatory on the issue of the statute of limitation; the jury found that the statutory limitation period as to all of the plaintiffs' claims had been tolled because of fraudulent concealment and, consequently, that all claims were timely filed. The jury found in favor of all defendants on the plaintiffs' claims for fraud, breach of fiduciary duty, and violations of Georgia RICO. On the plaintiffs' claim for negligent misrepresentation, the jury found in favor of the plaintiffs against PwC only. The jury awarded the trusts $10 million; the Kelletts and the other former CSI stockholders received only nominal damages. The trial court denied PwC's ensuing motion for judgment notwithstanding the verdict.

1. PwC contends that, because Bassett did not testify at trial, there was no evidence that he actually and justifiably relied on Coopers' alleged misrepresentations about Mariner's financial condition and, therefore, that the trial court erred in denying PwC's motion for a directed verdict and for judgment notwithstanding the verdict on the trusts' negligent misrepresentation claim. We disagree. The evidence authorized the jury to find that Coopers' partners knew that potential investors like the Kelletts would rely on

---

[2] For example, Mariner submitted claims to Medicare for reimbursement at rates far exceeding the "routine cost limit" that commonly applied, knowing that Medicare would reject many of the accompanying requests for an exception to the routine cost limit and pay a lower reimbursement, but immediately counted the full amount of the claims as revenue. In addition, Mariner employed a practice known as "off-the-books reserves," in which it used previously written-off assets to mask later reductions in income, and used componentized depreciation without required authorization.

[3] See OCGA § 16-14-1 et seq. (the Georgia Racketeer Influenced and Corrupt Organizations Act).

Coopers' audits and "clean" opinions regarding Mariner's financial condition and that Mariner was actively seeking to acquire and merge with other companies. The evidence further authorized the jury to find that, in the process of evaluating the proposed merger throughout 1994, when the Kelletts were serving as the trusts' trustees, they actually and justifiably relied on Coopers' opinions regarding Mariner's financial condition, particularly its 1991, 1992 and 1993 financial statements.[4] Finally, the evidence authorized the jury to find that the Kelletts did not learn of Coopers' misconduct while they remained the trustees and that the trusts, through the successor trustee, Bassett, first learned of that misconduct in January 2002. It is axiomatic that a trust can act only through its trustees. *Leone Hall Price Foundation v. Baker*, 276 Ga. 318 (1) (577 SE2d 779) (2003). Thus, when Bassett took over as the trustee in June 1995, the trusts (in the persons of the Kelletts) had already been misled by Coopers' misconduct; the status quo merely continued until Coopers' misconduct came to light.[5] We will not interfere with the jury's verdict. *Mindis Acquisition Corp. v. BDO Seidman*, 253 Ga. App. at 364 (1).

2. PwC contends that there was no evidence that Coopers' alleged fraud debarred or deterred Bassett from bringing the action

---

[4] Under Georgia law,
> one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the reliance by the third party is justifiable, [the factfinder] will look to the purpose for which the report or representation was made. If it can be shown that the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach.

*Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983). See *White v. BDO Seidman*, 249 Ga. App. 668, 673 (1) (549 SE2d 490) (2001) (to support a claim for investment losses against an accounting firm that audited the financial statements of a publicly-traded company under the "negligent misrepresentation" theory of recovery, a plaintiff must show, inter alia, that the plaintiff actually and justifiably relied on the representations in auditing reports issued by the accounting firm). See also Charles R. Adams III, Ga. Law of Torts, § 32-1 (2008 ed.) ("the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed"); John J. Dvorske, 13 Ga. Jur. Personal Injury and Torts, § 17:63 (updated August 2007); Restatement (Second) of Torts, § 552 (1977, updated June 2007).

[5] See Paul Coltoff et al., 90A CJS Trusts § 341 (updated through June 2008) (except where the powers conferred on a trustee by the trust instrument are clearly intended to be personal, the rights and powers of a trustee are annexed to the office, so as to pass to a successor of the original trustee).

within the four-year statutory limitation period[6] and, therefore, that the trial court erred in denying its motion for a directed verdict and for judgment notwithstanding the verdict on the basis of the statute of limitation. Again, we disagree.

OCGA § 9-3-96 provides for tolling of the limitation period by a defendant's fraud, as follows: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." As we have held,

> [i]n order to establish fraudulent concealment under this statute sufficient to toll the statute of limitation, a plaintiff must prove that: (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the applicable statute of limitation.

(Footnote omitted.) *Cochran Mill Assocs. v. Stephens*, 286 Ga. App. 241, 245 (1) (648 SE2d 764) (2007). For purposes of this appeal, PwC concedes that the plaintiffs introduced evidence that satisfied the first element, that Coopers engaged in actual fraud. The evidence authorized the jury to find that Coopers' fraud prevented the trustees from discovering the trusts' cause of action until January 2002, despite reasonable diligence. Because Bassett filed the claim within four years after the beginning of the limitation period, PwC's argument fails. *Gantt v. Bennett*, 231 Ga. App. 238, 244 (6) (499 SE2d 75) (1998); *Hahne v. Wylly*, 199 Ga. App. 811, 812-813 (1) (406 SE2d 94) (1991).

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED JULY 22, 2008 —
RECONSIDERATION DENIED AUGUST 13, 2008 —

*Sutherland, Asbill & Brennan, Elizabeth V. Tanis, Laurance J. Warco*, for appellant.

---

[6] See *Hardaway Co. v. Parsons, Brinckerhoff &c.*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997) (the four-year limitation period for actions claiming injury to personalty, OCGA § 9-3-31, is applicable to claims for negligent misrepresentation).

Alston & Bird, Mary C. Gill, Bondurant, Mixson & Elmore, Jill Pryor, Roy E. Barnes, John F. Salter, Jr., for appellee.