### A09A1756. TUCKER NURSING CENTER, INC. v. MOSBY.
(692 SE2d 727)

ADAMS, Judge.

Ricardo S. Mosby, as personal representative and administrator of the estate of Melvin Raybon, filed suit against, inter alia, appellant Tucker Nursing Center, Inc. asserting claims of negligence and violations of the Georgia Bill of Rights for Residents of Long-Term Care Facilities. In the complaint, as amended, plaintiff sought compensatory damages for pain, suffering and loss of dignity and special damages for medical expenses incurred as a result of Mr. Raybon's treatment at subsequent health care facilities for a Stage IV decubitus ulcer which developed on Mr. Raybon's left buttock while he was a resident at Tucker Nursing.[1]

The underlying facts will be set forth briefly and further developed to address the issues raised in this appeal. At the time Mr. Raybon was admitted to Tucker Nursing, he was at risk for developing pressure sores or ulcers because of underlying medical condi-

---

[1] Punitive damages were not sought in the complaint as amended.

tions, which included diabetes, peripheral vascular disease, a frontal lobe craniotomy performed to treat a brain tumor, amputation of his left leg, immobility and incontinence. Plaintiff contended that because of Mr. Raybon's condition, Tucker Nursing had a duty to implement appropriate preventive measures, including frequent turnings and repositioning. However, plaintiff presented evidence at trial showing that Mr. Raybon was not regularly turned and repositioned as his condition required. Plaintiff also contended that once the ulcer developed on his left buttock, Tucker Nursing did not appropriately assess and treat the ulcer, leading to numerous complications, including sepsis and malnutrition, requiring multiple hospitalizations and medical procedures, including a colostomy, the insertion of feeding tubes and surgical debridements of the wound. Additionally, plaintiff contended that because Mr. Raybon could not be positioned on his left side once he developed the pressure sore, he subsequently developed another pressure sore on his right side which required additional treatment.

A jury awarded the plaintiff $1,250,000 in special and compensatory damages, and the trial court entered judgment accordingly. Tucker Nursing appeals, challenging certain evidentiary rulings and portions of the trial court's charge to the jury. We affirm.

1. Citing *Lester v. S. J. Alexander, Inc.*, 127 Ga. App. 470 (193 SE2d 860) (1972), Tucker Nursing first contends that the trial court erred by admitting Mr. Raybon's extensive hospital bills because the plaintiff failed to segregate the amount of damages directly traceable to Tucker Nursing's alleged negligence from other unrelated expenses. Tucker Nursing argues that admitting the medical bills resulted in the introduction of irrelevant evidence that misled the jury as to the amount of special damages which were sought by the plaintiff and forced the jury to speculate on the amount the plaintiff was legally entitled to recover.

In pertinent part, OCGA § 24-7-9 (a) allows certain medical bills to be introduced without the necessity of expert testimony "upon a showing by [the] witness that the expenses were incurred in connection with the treatment of the injury, disease, or disability involved in the subject of litigation at trial. . . ." In *Lester*, we found that the trial court properly excluded medical bills because no evidence was presented to differentiate between expenses directly related to the treatment of plaintiff's injuries from an automobile collision and those connected with the treatment of an unrelated kidney ailment. In upholding the trial court, we reasoned that the evidence was inadmissible both because no showing had been made that the "expenses were incurred in connection with the treatment of the injury, disease or disability," caused by the tort, and under the "rule that testimony offered as a whole without separating the

relevant from that which is irrelevant and inadmissible is to be repelled in its entirety." (Citations omitted.) *Lester*, 127 Ga. App. at 472 (1).

> Where a party sues for damages, he has the burden of proof of showing the amount of loss in a manner in which the jury or the trial judge in nonjury cases can calculate the amount of the loss with a reasonable degree of certainty. An allowance for damages cannot be based on guess work. (Cit.) *Big Builder v. Evans*, 126 Ga. App. 457, 458 (2) (191 SE2d 290) (1972). In his or her sound discretion, a trial judge can properly exclude such a medical bill from evidence for the plaintiff's failure to segregate out the unrelated expenses from the medical expenses that were the necessary result of the tort. *Lester*[, 127 Ga. App.] at 472; see also *Jordan v. Hagewood*, 133 Ga. App. 958, 959 (2) (213 SE2d 85) (1975).

*CFUS Properties v. Thornton*, 246 Ga. App. 75, 79 (3) (539 SE2d 571) (2000).

We find no abuse of discretion in the admission of the medical bills in this case. Plaintiff's expert, Dr. Deborah Robin, testified that Mr. Raybon was in the hospital for approximately 120 days to undergo treatment for the ulcer, and that the only reason he required hospitalization on those occasions was for the treatment of the ulcer and the resulting complications. Dr. Robin also testified that any other treatment Mr. Raybon required during his hospital stays was to manage his chronic or ancillary conditions and that those conditions could have continued to be managed in a nursing home setting if he had not required the repeated hospitalizations for treatment of the ulcer and complications. Thus, in order to calculate the amount of damages directly attributable to the treatment of the ulcer, Dr. Robin deducted the amount, based on his prior nursing home bills, Mr. Raybon would have incurred for nursing home care during the hospitalizations, from the total medical expenses incurred during his hospitalizations ($259,142 minus $29,467) thereby attributing $229,675 directly to the treatment of the ulcer. Dr. Robin also testified that although the amount of nursing home costs was an "estimate," she calculated the nursing home costs on the "high" end and that it was her opinion that this was a fair and reasonable way of determining the amount of medical bills that Mr. Raybon incurred as a result of requiring the additional extensive treatment for the ulcer.

> A jury must be able to calculate the amount of damages from the data furnished and it cannot be placed in a position

where an allowance of loss is based on guesswork. [Cit.] A jury must be able to calculate loss with a reasonable certainty. [Cit.] The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate the damages with reasonable certainty. It is not necessary, however, that the party on whom the burden thus rests should submit exact figures.

(Citation and punctuation omitted.) *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 740 (6) (320 SE2d 863) (1984).

Contrary to Tucker Nursing's contentions on appeal, we do not believe that *Lester* mandates reversal here. In *Lester*, unlike the present case, the plaintiff offered no basis to distinguish the expenses incurred on account of treatment for the injury resulting from the tort from those incurred because of plaintiff's other medical condition. Although it is obvious in this case that separating the costs solely attributable to the treatment of the ulcer cannot be calculated precisely or with absolute certainty, that is not the standard that applies. Based on the circumstances here, we believe that the plaintiff provided the jury with a method of calculating the damages with the necessary reasonable degree of certainty. This enumeration thus provides no basis for reversal.

2. Citing OCGA § 24-2-2, Tucker Nursing next contends that former employees were improperly allowed to testify, via their videotaped depositions, about inadequate staffing, lack of supplies, complaints about care and deficient care generally at Tucker Nursing. Tucker Nursing argues that the admission of this evidence violated the general prohibition on the admission of "bad character" evidence and the general prohibition on the admission of prior conduct or negligence to prove the specific act of negligence for which recovery is sought.

The record shows that Tucker Nursing filed a motion in limine to exclude this evidence, and that the trial court denied the motion

to the extent it seeks to exclude the testimony of former Tucker Nursing Center employees regarding their experience and observations at Tucker Nursing Center during their employment there. This Court finds that, as a general rule, evidence of conduct while the decedent was a resident at Tucker Nursing Center is relevant and admissible. To the extent that Plaintiff intends to introduce evidence of other prior conduct by Defendant to prove negligence in this case, the Court withholds ruling until Plaintiff can lay a proper foundation for such evidence.

At the outset we note that the trial court's ruling, as quoted above, did not permit the "wholesale introduction of prejudicial similar acts testimony" as Tucker Nursing contends on appeal. Rather, read in its entirety, the trial court found that, generally, evidence of how the nursing home was run while Mr. Raybon was a resident at Tucker Nursing would be relevant and admissible. And the trial court specifically stated that its ruling did not extend to the admission of evidence of prior conduct to prove negligence in this case. Thus, it was incumbent upon Tucker Nursing to object to evidence of that nature if and when it was introduced at trial, since the trial court specifically withheld ruling on its admissibility. See *Rogers v. State*, 282 Ga. 659, 663 (6) (a) (653 SE2d 31) (2007) (the trial court has the absolute right to defer ruling on the admissibility of evidence until trial).

Moreover, the trial court did not abuse its discretion by ruling that the testimony concerning conditions at the nursing home while Mr. Raybon was a patient there was generally relevant and admissible.

> "Evidence must relate to the questions being tried . . . and bear upon them either directly or indirectly." OCGA § 24-2-1. Relevant evidence includes acts or circumstances which serve to elucidate or throw light upon a material issue. *Smith v. Saulsbury*, 286 Ga. App. 322 (649 SE2d 344) (2007).

*Atlando Holdings, LLC v. BDO Seidman, LLP*, 290 Ga. App. 665, 667-668 (1) (660 SE2d 463) (2008). Further,

> [a]n abuse of discretion is generally the only basis for overruling a trial court's judgment as to evidence's relevancy. (Cit.) The existence of such an abuse may be measured by weighing the challenged evidence's probative value against the risk that its admission misled the jury or created a substantial danger of unfair prejudice or confusion. (Cit.) *Key v. Grant*, 238 Ga. App. 818, 819 (2) (520 SE2d 277) (1999).

(Punctuation omitted.) Id. at 667 (1).

As to the specific testimony at issue here, the record and transcript shows that the witnesses were certified nursing assistants (CNAs) who were directly involved in patient care while Mr. Raybon was a resident at Tucker Nursing, that their testimony pertained to the conditions at Tucker Nursing while Mr. Raybon was a patient there, and that the testimony specifically related to the care he and

other patients received, including the fact they observed Mr. Raybon or other residents soiled with urine and waste, that they lacked the supplies necessary to do their jobs, which including bathing and cleaning the patients, and that the facility lacked enough staff to turn or reposition Mr. Raybon every two hours as his condition required.

We disagree with Tucker Nursing's contention that this testimony — that the facility was short staffed and lacked various supplies, that residents, including Mr. Raybon, were observed soiled with urine and waste, and that residents, including Mr. Raybon, were not turned and repositioned as often as their condition required — was not "directly" relevant to plaintiff's claim that these conditions led to the development of Mr. Raybon's ulcer.

Moreover, the CNAs also presented testimony that Tucker Nursing was aware of these conditions and did nothing to correct them, which was also clearly relevant to its liability in this case. And lastly, as plaintiff points out, Tucker Nursing's own director of nursing testified that she was aware of complaints from the CNAs about lack of staffing and that she was aware that the residents had also complained about lack of staffing and the care they received. Thus, to some extent, this evidence was merely cumulative of other testimony which was introduced without objection from Tucker Nursing's own witness.

Additionally, Tucker Nursing also specifically complains about the testimony of CNA Lisa James that Tucker Nursing was "the worst [nursing home she] ever worked at" arguing that this CNA could only vaguely recall Mr. Raybon, and could not recall specifically caring for him. Plaintiff, argues, however, that Tucker Nursing has waived appellate consideration of this claimed error because the admissibility of this particular testimony was not raised and ruled upon below. We agree. Although Tucker Nursing filed specific objections to the deposition testimony of Lisa James and others, and although a hearing was held in which these objections were heard and ruled upon, it did not challenge this particular testimony, although it did raise objections to other portions of James' testimony, and the trial court sustained several objections to her testimony during the hearing. Thus, we agree with plaintiff that this argument is waived.[2]

---

[2] Although it appears that at the beginning of the hearing the trial court ruled that it would not consider objections not made during the deposition, Tucker Nursing does not contend that it was improperly denied the opportunity to present an objection to this evidence at the hearing. Moreover, Tucker Nursing does not challenge the trial court's ruling at the beginning of the hearing that all objections not made during the deposition were waived. In

3. Contrary to Tucker Nursing's third enumeration of error, we find that the trial court did not abuse its discretion by admitting the videotaped deposition of Estelle Heartwell as rebuttal evidence. This evidence was presented after Tucker Nursing presented evidence, inter alia, that there was never a problem with respect to turning and repositioning patients at Tucker Nursing and after it presented evidence from an expert who testified that, based on her review of certain documentation, Mr. Raybon was turned at least every two hours and kept clean and dry. Ms. Heartwell, who was one of the CNAs who personally cared for Mr. Raybon, testified to the contrary. "Questions of admissibility of such evidence lie wholly within the sound discretion of the trial court. [Cit.] We find no abuse of discretion in this case." *Hutto v. Shedd*, 181 Ga. App. 654, 656 (1) (353 SE2d 596) (1987).

4. Tucker Nursing argues that the trial court should not have excluded evidence of complaints by Mr. Raybon's daughter to the Georgia Department of Human Resources ("GDHR") concerning his care, and likewise should have admitted evidence concerning the results of the investigation of those complaints. The trial court found, in essence, that it was for the jury to determine whether Tucker Nursing was negligent in its care of Mr. Raybon and the fact that the GDHR may have concluded the complaints made to it were for the most part "unsubstantiated" would not be relevant to the jury's consideration of that issue. We reiterate that generally we do not overrule a trial court's decision in evidentiary matters unless we find that the trial court abused its discretion. And in making that determination, we weigh the evidence's probative value against the risk that the jury might be misled or unfair prejudice or confusion might result. *Atlando Holdings*, 297 Ga. App. at 667 (1). The trial court did not abuse its discretion by finding that Mr. Raybon's daughter's complaints about Tucker Nursing were irrelevant to the issues to be decided here. She was not a party to the case and this testimony could not establish Tucker Nursing's negligence. Yet the jury could have very well confused the findings of the regulatory agency to be evidence pertinent to its determination of the merits of the claims asserted here.

We also reject Tucker Nursing's argument that the trial court's ruling infringed upon its right to a thorough and sifting cross-examination of key witnesses. The trial court's ruling expressly allowed this evidence to be used for "other lawful purposes at trial, including but not limited to impeachment of the witness" and stated that "[i]f any proper purpose arises during trial, this Court will

---

any event, the only objection posed as to this testimony during the deposition was an objection to the form of the question.

revisit the admissibility of any such complaints." Tucker Nursing does not suggest that it attempted to impeach a witness with this excluded evidence and that the trial court did not allow the evidence to be used for that purpose. This argument thus also provides no basis for reversal.

5. Tucker Nursing also challenges the trial court's charge to the jury, arguing the trial court erred by instructing the jury on concurrent negligence and the "eggshell" plaintiff. Plaintiff points out that following the trial court's charge to the jury, Tucker Nursing objected only on the basis that the charges were not adjusted to the law or facts of the case, and urges that this general objection was insufficient to preserve the detailed objections now voiced on appeal.

OCGA § 5-5-24 (a) provides in pertinent part that "no party may complain of the giving [of] an instruction to the jury unless he objects thereto . . . , stating distinctly the matter to which he objects and the grounds of his objection." And our Supreme Court has construed this section to require objections to be "stated distinctly enough for a 'reasonable' trial judge to understand its nature, enabling him to rule intelligently on the specific point." *Christiansen v. Robertson*, 237 Ga. 711 (229 SE2d 472) (1976). See also *Shennett v. Piggly Wiggly Southern*, 197 Ga. App. 502, 505 (399 SE2d 476) (1990) (on motion for rehearing); *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821, 822 (2) (354 SE2d 6) (1987).

In its reply brief, however, Tucker Nursing asserts that each party "offered numerous substantive objections to the submitted charges" at the charge conference, which were ruled on by the trial court. However, "objections to charges must be made after the jury is charged and before the verdict; objections made at charging conferences before the charge is given do not preserve charging issues for appellate review." (Citation and punctuation omitted.) *Christie v. Rainmaster Irrigation*, 299 Ga. App. 383, 387 (1) (682 SE2d 687) (2009). Moreover, even if the trial court had knowledge of the specific arguments that were presented during the charge conference, thus giving him the necessary insight to rule intelligently on the general objections posed following the charge, that conference apparently was not recorded or transcribed and we have no record indicating what specific objections or arguments were made to the trial court at that time. Thus, in the absence of anything in the record that demonstrates that the specific challenges to the jury instruction now presented to this Court were raised and ruled on below, we will not now consider these contentions. "[T]his comports with our general rule of appellate procedure that we will not consider grounds on appeal which are different from those urged below, and this rule pertains to objections to charges as well as other trial matters. See, e.g., *City of Dalton [v. Smith]*, 210 Ga. App. [858,

858-859 (1) (437 SE2d 827) (1993)]." *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 236 (2) (547 SE2d 637) (2001).

6. Lastly, Tucker Nursing contends the trial court erred by permitting discovery into and admitting evidence relating to a Corporate Integrity Agreement involving the United States Office of Inspector General. Although Tucker Nursing does not point to this or any other ruling by the trial court on this issue,[3] it appears that Tucker Nursing is challenging the trial court's order denying its motion to exclude this evidence. That ruling, which appears to us to be narrowly drawn, notes that while Tucker Nursing sought to exclude all evidence relating to this Agreement, the privileges which it argues are applicable here do not provide such broad protection. Thus, we find no error in the trial court's denial of Tucker Nursing's motion to exclude *all* evidence pertaining to this Agreement. Moreover, plaintiff contends that it never sought to admit any protected materials, and indeed Tucker Nursing has not directed us to any portion of the transcript where plaintiff sought to admit protected materials, where it objected to the introduction of protected materials, or where the trial court ruled that such evidence was admissible. This enumeration thus presents nothing for our review.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED MARCH 24, 2010.

*Carlton Fields, Christopher B. Freeman, Walter H. Bush, Jr.*, for appellant.

*Buchanan & Land, Benjamin A. Land*, for appellee.

---

[3] The record and transcript in this case is voluminous, consisting of 26 volumes, excluding supplemental records and transcripts which have been transmitted to this Court at later times and numbered separately.