A01A0316, A01A0453. WHITE et al. v. BDO SEIDMAN, LLP et al.; and vice versa.
A01A0317, A01A0454. BLAKE et al. v. BDO SEIDMAN, LLP; and vice versa.
(549 SE2d 490)

ELLINGTON, Judge.

These appeals arise from a superior court order granting summary judgment to an accounting firm in consolidated civil actions. In Case Nos. A01A0316 and A01A0317, the named individual plaintiffs and the certified class they represent ("appellants") sued accounting firm BDO Seidman, a partnership, and BDO Seidman, LLP, the successor in interest to BDO Seidman, and BDO Seidman partner and accountant Ernie Davis (collectively "BDO"). Appellants sought damages for their financial losses in the publicly offered securities of G & W Financial Corporation ("GWFC") and its parent, G & W Asset Management Corporation ("GWAM"), companies that BDO audited.

---

The appellants claim BDO caused their losses by negligently performing certain audits of the companies' financial statements and by negligently certifying financial statements which contained inaccuracies regarding the companies' financial soundness. In Case Nos. A01A0453 and A01A0454, BDO cross-appeals, contending the trial court erred in certifying the cases as class actions pursuant to OCGA § 9-11-23 (a). We consolidate these cases for the purpose of appeal, and, for the following reasons, we affirm.

### Case Nos. A01A0316 and A01A0317

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (503 SE2d 581) (1998).

It is undisputed that the appellants are individual investors who purchased high-risk,[1] publicly offered GWAM and GWFC securities through their own stockbrokers. The appellants were not clients of BDO and had no contractual relationship with BDO.

GWAM retained BDO to audit its financial statements in preparation for an initial public offering of notes. BDO issued audit opinions on GWAM's financial statements for the fiscal years ending December 31, 1992, 1993, 1994, and 1995. The audit opinions for these years represented: (1) that the financial statements fairly and accurately showed GWAM's year-end financial position, (2) that the financial statements contained no material misstatements, and (3) that BDO's audit was performed according to generally accepted auditing standards. The audit opinions did not endorse GWAM or GWFC or otherwise express an opinion regarding the quality of the investment. BDO represented only that GWAM's financial statements, which always revealed that GWAM was losing money, fairly and accurately reflected GWAM's financial condition. Consequently, BDO's audit opinion was meaningful to an investor only when read

---

[1] Appellants' brokers sold them a variety of publicly offered GWAM and GWFC securities that were issued to fund a loan program designed to assist individuals in paying their automobile insurance premiums. These securities included promissory notes, common stock, preferred stock, limited partnership interests, and trust interests. The prospectuses accompanying these securities emphasized that they were speculative, subject to complete loss, and intended only for investors of sophistication and substantial means.

in conjunction with GWAM's financial statements. BDO's audit opinion for the year ending in 1995 also included a "going concern" qualification expressing doubt about GWAM's continued financial viability. In the summer of 1996, GWAM defaulted on its securities and shortly thereafter filed for liquidation under Chapter 11 of the United States Bankruptcy Code.

Most of the appellants admit they did not review GWAM's financial statements nor did they see or hear BDO's audit opinion with respect to those financial statements prior to making their investment. Many of the appellants contend they relied either solely or primarily on their broker's recommendation to buy the securities. Several of the appellants contend they would not have invested in GWAM had their broker shared what the audited financial statements actually showed — that GWAM was losing money and had never been profitable. None of the appellants assert that they actually relied upon any representation in BDO's audit opinions in making their decision to invest in the securities.

1. Appellants couch their claim against BDO in terms of accounting malpractice. Georgia law, however, provides only one cause of action to persons who are not clients of an accounting firm but who wish to sue the firm and any of its accountants for professional malpractice: an action for negligent misrepresentation. See *Badische Corp. v. Caylor*, 257 Ga. 131, 132-133 (356 SE2d 198) (1987); *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983).

In cases like those before us, where the plaintiffs are third parties who are not in privity with the party alleged to have made the negligent misrepresentation, recovery may be had only when the "known third party's reliance was the desired result of the misrepresentation." *Robert & Co. Assoc.*, 250 Ga. at 681. In *Robert & Co. Assoc.*, the Supreme Court of Georgia adopted the rule enunciated in the Restatement of Torts, 2d, § 552 (1977), which provides:

> [O]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly. In making a determination of whether the reliance by the third party is justifiable, we will look to the purpose for which the report or representation was made. If it can be shown that

the representation was made for the purpose of inducing third parties to rely and act upon the reliance, then liability to the third party can attach.

*Robert & Co. Assoc.*, 250 Ga. at 681-682. In the cases before us, the superior court granted summary judgment to BDO because the appellants failed to present evidence in support of the justifiable reliance element of their claim of negligent misrepresentation. The superior court did not address the duty and causation elements of the claim, and neither do we.

Appellants argue they do not have to show they actually relied on any particular statement made by BDO in making their investment decision; rather, they argue they may survive summary judgment upon a showing of "indirect reliance." The appellants contend that "indirect reliance" may be established by showing that their decision to buy the securities was "causally dependent" upon or "closely connected" to BDO's audit opinions in that (1) the Securities & Exchange Commission ("SEC") would not have approved the public offering without BDO's audit opinions; and (2) the appellants' brokers would not have sold the securities without SEC approval. Therefore, the appellants indirectly relied upon BDO's audits because the audits were necessary to make the securities available to them. Or, as one appellant summarized: The investors were "the intended beneficiaries of the paternalism of the SEC's regulatory procedures." Appellants argue that the Supreme Court of Georgia embraced this idea when it adopted that portion of § 552 of the Restatement that extended liability to those persons for whom the information was intended "either directly or indirectly." See *Robert & Co. Assoc.*, 250 Ga. at 681-682. Assuming, for the sake of argument, that the implicit assumptions in the appellants' indirect reliance theory are supportable, we cannot agree that Georgia law permits such indirect reliance to substitute for proof of actual reliance in a negligent misrepresentation case. In fact, appellants' indirect reliance argument is, for all practical purposes, an argument for a rebuttable presumption of reliance similar to that of the so-called "fraud on the market"[2] or "fraud

---

[2] According to the "fraud on the market" theory, a plaintiff claiming securities fraud under § 10(b) of the Securities Exchange Act of 1934 is entitled to a rebuttable presumption of reliance based on the idea that "in an open and developed securities market, the price of a company's stock is determined by the available material information." (Citation and punctuation omitted.) *Basic Inc. v. Levinson*, 485 U. S. 224, 241 (108 SC 978, 99 LE2d 194) (1988). Consequently, "[m]isleading statements will . . . defraud purchasers of stock even if the purchasers do not directly rely on the misstatements." (Citation and punctuation omitted.) Id. at 241-242.

on the regulatory process"[3] theories of reliance used in federal securities fraud cases.

Although our appellate courts have not addressed whether a third party's reliance may be presumed in a common law negligent misrepresentation case, a majority of federal courts considering the question have held that § 552 of the Restatement requires actual reliance. See *In re ValuJet Securities Litigation*, 984 FSupp. 1472, 1481 (VII) (N.D. Ga. 1997) ("the majority of courts have held that § 552 of the Restatement requires actual reliance before a party may be held liable for negligent misrepresentation. [Cits.]"); *Smolen v. Deloitte, Haskins & Sells*, 921 F2d 959, 964 (9th Cir. 1990) (under § 552 "negligent misrepresentation requires actual and justifiable reliance"); *Goldman Svcs. Mechanical Contracting v. Citizens Bank &c. Co.*, 812 FSupp. 738, 742 (W.D. Ky. 1992) (the "Restatement and its comments make clear that actual reliance on the information by the person for whom it was intended is required for liability for a negligent misrepresentation"). We follow this majority view because proof of justifiable reliance in Georgia has historically required some evidence that a plaintiff exercised due diligence in discovering the truth. See, e.g., *Artzner v. A & A Exterminators*, 242 Ga. App. 766, 771-772 (2) (531 SE2d 200) (2000); *Williams v. Fallaize Ins. Agency*, 220 Ga. App. 411, 414 (1) (469 SE2d 752) (1996). If we were to adopt the appellants' indirect reliance theory, we would also be shifting, to a large extent, the appellants' due diligence obligation onto the regulatory process and those involved in that process. For the following reasons, we believe that is unwise.

Although the appellants now complain that BDO's audit reports formed the sine qua non of their investments and that they lacked the expertise to investigate the truth of BDO's reports, the ultimate decision to invest is often based on a number of business factors that have little to do with an accountant's audit report. After all, an auditing certified public accountant rarely examines every aspect of a client's business, has little or no expertise or control over a client's products, services, or markets, and does not choose or control the client's executives or make its business decisions. See Siliciano, Negligent Accounting & the Limits of Instrumental Tort Reform, 86 Mich. L. Rev. 1929, 1932-1933 (1988). Thus, an investment decision based solely or primarily on an accountant's audit report would be, in most

---

[3] The "fraud on the regulatory process" theory rests on the idea that in making investment decisions, an investor relies, at least indirectly, on the integrity of the regulatory process and the truth of any representations made to the appropriate agencies and the investors. See *Mishkin v. Peat, Marwick, Mitchell & Co.*, 658 FSupp. 271, 274-275 (S.D. N.Y. 1987) (a § 10(b) case applying fraud on the regulatory process theory to presume reliance by a securities broker-dealer's investors).

cases, difficult to justify. Consequently, we see no reason why such an investor should be presumed to have relied upon it in a common law negligent misrepresentation case. Moreover,

> [a]s a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, diligence, and contracting power, as well as other informational tools. This kind of self-reliance promotes sound investment and credit practices and discourages the careless use of monetary resources. If, instead, third parties are simply permitted to recover from the auditor for mistakes in the client's financial statements, the auditor becomes, in effect, an insurer of not only the financial statements, but of bad loans and investments [as well].

(Footnote omitted.) *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 403 (IV) (A) (2) (834 P2d 745) (1992).

For these reasons, we hold that appellants must show they actually and justifiably relied on the representations in BDO's auditing reports before they may recover for their investment losses under a common law negligent misrepresentation theory of recovery. Because appellants failed to make a prima facie showing satisfying the reliance element of their claim, the trial court properly granted BDO summary judgment.

### Case Nos. A01A0453 and A01A0454

2. Because we have resolved the direct appeals in favor of BDO, their defensive cross-appeals are moot and must be dismissed. See *Smith v. Ga. Kaolin Co.*, 269 Ga. 475, 477 (3) (498 SE2d 266) (1998); *Welch v. Welch*, 265 Ga. 89, 91 (453 SE2d 445) (1995).

*Judgments affirmed in Case Nos. A01A0316 and A01A0317. Appeals dismissed in Case Nos. A01A0453 and A01A0454. Johnson, P. J., and Ruffin, J., concur.*

DECIDED MAY 22, 2001 

*Womble, Carlyle, Sandridge & Rice, Nisbet S. Kendrick III, Everett W. Gee III, Caroline B. Keller,* for White.

*Carr, Tabb, Pope & Freeman, W. Pitts Carr, Render C. Freeman, Vaughan & Murphy, Charles C. Murphy, Jr., Dane L. Steffenson, Davis, Zipperman, Kirschenbaum & Lotito, Nicholas A. Lotito,* for Blake.

*Sutherland, Asbill & Brennan, Steven L. Polk, Peter J. Anderson,*

*Kristen J. Indermark, Rebecca L. Burnaugh, Todd E. Ratner,* for BDO Seidman, LLP et al.

