S09Q1585. HOLMES et al. v. GRUBMAN et al.

(691 SE2d 196)

CARLEY, Presiding Justice.

As of June 1999, Appellants William K. Holmes and four entities controlled by him owned 2.1 million shares in WorldCom, Inc., the major telecommunications company which went bankrupt after the revelation of massive accounting fraud in 2002. In this suit against Appellees Citigroup Global Markets, Inc., f/k/a Salomon Smith Barney & Co., Inc. (SSB), and its financial analyst, Jack Grubman, Appellants allege that, on June 25, 1999, Holmes verbally ordered his broker at SSB to sell all of Appellants' WorldCom stock, which was then being traded at approximately $92 per share. Appellants further allege that the SSB broker convinced Holmes not to sell, based on recent research reports by Grubman and on his reputation, and that Appellees were operating under a conflict of interest, knowing that WorldCom stock was grossly overvalued, but nevertheless promoting it in order to retain WorldCom's lucrative investment banking business. Instead of selling, Holmes purchased additional shares as the stock price declined. In October 2000, Appellants were forced to sell all of their WorldCom shares in order to meet margin calls, resulting in alleged losses of nearly $200 million.

Appellants filed for bankruptcy and, in 2003, brought this action for damages under Georgia law in the United States Bankruptcy Court for the Middle District of Georgia. The case was transferred to the United States District Court for the Southern District of New York and consolidated for pre-trial purposes with the multi-district

WorldCom Securities Litigation. Appellants' third amended complaint includes claims of fraud, negligent misrepresentation, negligence in making disclosures, and breach of fiduciary duty. The district court dismissed that complaint for failure to state a claim upon which relief can be granted. *Holmes v. Grubman (In re WorldCom, Inc. Securities Litigation)*, 456 FSupp.2d 508 (S.D.N.Y. 2006). On appeal, the United States Court of Appeals for the Second Circuit certified the following three questions to this court:

> I. Does Georgia common law recognize fraud claims based on forbearance in the sale of publicly traded securities?
>
> II. With respect to a tort claim based on misrepresentations or omissions concerning publicly traded securities, is proximate cause adequately pleaded under Georgia law when a plaintiff alleges that his injury was a reasonably foreseeable result of defendant's false or misleading statements but does not allege that the truth concealed by the defendant entered the market place, thereby precipitating a drop in the price of the security?
>
> III. Under Georgia law, does a brokerage firm owe a fiduciary duty to the holder of a non-discretionary account?

*Holmes v. Grubman*, 568 F3d 329, 340-341 (D) (2nd Cir. 2009).

1. The claims to which the first question refers are often called "holder" claims. Although this Court has never specifically addressed such claims, it is well settled that one of the elements of the tort of fraud in Georgia is an " 'intention to induce the plaintiff to act *or refrain from acting . . . .*' [Cit.]" (Emphasis supplied.) *Stiefel v. Schick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990). See also Charles R. Adams III, *Ga. Law of Torts* § 32-1, p. 659 (2008-2009 ed.). This language is consistent with the Restatement (Second) of Torts § 525 (1977) and the general rule that "induced forbearance can be the basis for tort liability. ([Cits.])" *Small v. Fritz Cos.*, 65 P3d 1255, 1259 (II) (Cal. 2003). See also *Rogers v. Cisco Systems*, 268 FSupp.2d 1305, 1313 (II) (B) (2) (N.D. Fla. 2003); *Gutman v. Howard Savings Bank*, 748 FSupp. 254, 262 (II) (B) (1), 264 (II) (B) (2) (D.N.J. 1990).

> The public policy underlying the actionability of fraud exists regardless of whether plaintiff is induced to act or refrain from action. Lies which deceive and injure do not become innocent merely because the deceived continue to do something rather than begin to do something else. Inducement is the substance of reliance; the form of reliance — action or inaction — is not critical to the actionability of fraud.

*Gutman v. Howard Savings Bank*, supra at 264 (II) (B) (2).

The Supreme Court of the United States has held that only actual purchasers or sellers of securities can make a claim pursuant to Rule 10b-5, promulgated by the Securities and Exchange Commission under § 10 (b) of the Securities Exchange Act of 1934. *Blue Chip Stamps v. Manor Drug Stores*, 421 U. S. 723, 730-731 (II), 749 (III) (95 SC 1917, 44 LE2d 539) (1975). However, that Court also noted that one disadvantage of its holding "is attenuated to the extent that remedies are available to nonpurchasers and nonsellers under state law. [Cits.]" *Blue Chip Stamps v. Manor Drug Stores*, supra at 738 (III) fn. 9. Indeed, the Supreme Court recognized that it has "long been established in the ordinary case of deceit that a misrepresentation which leads to a refusal to purchase or to sell is actionable in just the same way as a misrepresentation which leads to the consummation of a purchase or sale. [Cit.]" *Blue Chip Stamps v. Manor Drug Stores*, supra at 744 (III). Compare *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U. S. 71, 87 (IV) (126 SC 1503, 164 LE2d 179) (2006) (Securities Litigation Uniform Standards Act preempts state-law holder class-action claims).

Furthermore, although Appellees "are immune from 10b-5 liability, they should not be immunized from common law liability merely because their alleged fraud occurred in the securities market rather than the real estate or used car market." *Gutman v. Howard Savings Bank*, supra at 266 (II) (B) (2). The Georgia Court of Appeals has acknowledged that "evidence of fraud . . . includ[es] evidence which supported the conclusion that [the plaintiffs] were fraudulently induced into making *and keeping* their investments." (Emphasis supplied.) *Argentum Intl. v. Woods*, 280 Ga. App. 440, 445 (2) (b) (634 SE2d 195) (2006). Compare *Mack v. Smith*, 178 Ga. App. 652, 653 (4) (344 SE2d 474) (1986) (where plaintiff's lack of purchase of the securities or investments contracts offered to him by defendants deprived him of standing under federal and state securities statutes, but was not the basis for affirmance of the dismissal of his common-law fraud claim). "Most other states that have confronted this issue have concluded that forbearance from selling stock is sufficient reliance to support a cause of action. ([Cits.])" *Small v. Fritz Cos.*, supra. "Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party." OCGA § 51-6-1. Exceptions to this principle of liability "'are not to be lightly created. . . .'" *Small v. Fritz Cos.*, supra at 1265 (II) (C).

Appellees offer several policy grounds for barring holder claims, including, as the Second Circuit noted, "(1) incoherent theories of proximate cause and damages, (2) speculative damages, and (3) unprovable claims of a subjective intent to sell." *Holmes v. Grubman*, supra at 337 (C) (1). After reviewing all such policy considerations,

we conclude that, although they

> may justify placing limitations on a holder's cause of action, they do not justify a categorical denial of that cause of action. . . . [T]he high court's decision in *Blue Chip Stamps*, while recognizing policy considerations similar to those defendants advance here, did not view those considerations as justification for a total denial of relief to defrauded holders; it reasoned only that the *federal* courts could deny a forum to wronged stockholders who are not sellers or buyers without unjust consequences because these stockholders retained a remedy in *state* courts. (Emphasis in original.)

*Small v. Fritz Cos.*, supra at 1260 (II), 1261 (II) (A). "Persons claiming that, for reasons of policy, they should be immune from liability for intentional fraud bear a very heavy burden of persuasion, one that defendants here have not sustained." *Small v. Fritz Cos.*, supra at 1265 (II) (C).

In many of the decisions on which Appellees rely, holder claims were not categorically rejected, but the plaintiffs failed to allege or prove that they specifically desired to sell their stock at a certain time, or causation was not sufficiently alleged or proved. See *Arent v. Distribution Sciences*, 975 F2d 1370, 1374 (3) (8th Cir. 1992); *Kagan v. Edison Bros. Stores*, 907 F2d 690, 692 (7th Cir. 1990); *Crocker v. Fed. Deposit Ins. Corp.*, 826 F2d 347, 350 (II) (B) (5th Cir. 1987); *Arnlund v. Deloitte & Touche*, 199 FSupp.2d 461, 489-490 (C) (1) (E.D.Va. 2002). Similarly, although we have determined that holder claims should be recognized under Georgia law, we further conclude that the limitations imposed in other jurisdictions are appropriate. When acknowledging in *Blue Chip Stamps* the continuing viability of common-law holder claims, "[t]he Supreme Court considered the typical fraud context to be one in which the parties knew each other and the alleged misrepresentations occurred through direct communication." *Gutman v. Howard Savings Bank*, supra at 265 (II) (B) (2). Indeed, the Supreme Court distinguished the "universe of transactions governed by the 1934 Act, [where] privity of dealing or even personal contact between potential defendant and potential plaintiff is the exception and not the rule." *Blue Chip Stamps v. Manor Drug Stores*, supra at 745 (III). Accordingly, we conclude that Georgia law permits holder claims

> where, as here, plaintiffs allege that misrepresentations were directed at them to their injury. Although the price of allowing cases like [Appellees'] to go forward may be that

some such cases will unfairly waste the Court's time and the defendants' reputation and money, that is a price the common law has always paid.

*Gutman v. Howard Savings Bank*, supra at 266 (II) (B) (2). See also *Newby v. Enron Corp. (In re Enron Corp. Securities, Derivative & "ERISA" Litigation)*, 490 FSupp.2d 784, 819 (V) (A) (S.D. Tex. 2007); *Goldin v. Salomon Smith Barney*, 994 S2d 517, 520 (Fla. App. 2008) ("great weight of authority concluding that with holder claims, the direct communication requirement is a logically necessary sub-element of justifiable reliance under New York law. [Cit.]"). We further agree with those courts which require

specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place. The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations.

*Small v. Fritz Cos.*, supra at 1265 (III). Such distinction

reinforces the reliance requirement by separating plaintiffs who actually and justifiably relied upon the misrepresentations from the general investing public, who, though they did not so rely, suffered the loss due to the decline in share value. This distinction also separates common law fraud claims, which must prove actual reliance, from federal securities fraud claims, which may rely upon the fraud-on-the-market theory.

*Rogers v. Cisco Systems*, supra at 1314 (II) (B) (2), fn. 18.

Although the Second Circuit's first question was limited to fraud claims, the particular phrasing thereof does not prevent us from reformulating or expanding upon the question. *Holmes v. Grubman*, supra at 341 (D). See also *Miller v. Harco Nat. Ins. Co.*, 274 Ga. 387, 389 (552 SE2d 848) (2001). We see no reason why our authorization of common-law fraud claims based on forbearance in the sale of publicly traded securities, along with the limitations articulated above, should not extend to Appellants' other common-law tort claims. In particular, we note that " '(t)he same principles apply to both fraud and negligent misrepresentation cases' " and that " 'the

only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed.' [Cit.]" *Mindis Acquisition Corp. v. BDO Seidman*, 253 Ga. App. 360, 367 (4) (559 SE2d 111) (2002), rev'd on other grounds, 276 Ga. 311 (578 SE2d 400) (2003). Thus, we hold that negligent misrepresentation claims, like fraud claims, can be based on forbearance in the sale of publicly traded securities. See *Gutman v. Howard Savings Bank*, supra at 264 (II) (B) (2); *Small v. Fritz Cos.*, supra at 1258 (II). The direct communication and specific reliance limitations on fraud claims by "holders" also apply to negligent misrepresentation claims. See *White v. BDO Seidman*, 249 Ga. App. 668, 670 (1) (549 SE2d 490) (2001) (requiring actual reliance for a common-law negligent misrepresentation claim and rejecting presumed reliance and fraud-on-the-market theories).

2. Regarding the second question, we initially recognize that this Court is not authorized to determine what allegations are necessary for a pleading to be adequate in a federal diversity action. " 'Although state law governs the burden of proving fraud at trial, the procedure for pleading fraud in federal courts in all diversity suits is governed by the special pleading requirements of Federal Rule of Civil Procedure 9 (b).' [Cit.]" *Universal Communication Systems v. Lycos*, 478 F3d 413, 427 (III) (1st Cir. 2007). Thus, we will address only the burden placed on a plaintiff at trial to prove proximate cause with respect to a tort claim based on misrepresentations or omissions concerning publicly traded securities.

Appellants contend that Georgia law has incorporated neither the loss causation standard from securities law nor the negligence concept of proximate causation into the intentional tort of fraud. For several decades, however, we have held that, in order to recover in tort for fraud, the plaintiff must prove that he sustained loss or damage as the proximate result of the alleged misrepresentations. *Bacote v. Wyckoff*, 251 Ga. 862, 865 (1) (310 SE2d 520) (1984); *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148, 152 (2) (304 SE2d 365) (1983); *Brown v. Techdata Corp.*, 238 Ga. 622, 625 (234 SE2d 787) (1977); *McLendon v. Galloway*, 216 Ga. 261, 263 (2) (116 SE2d 208) (1960). See also *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 300 (2), fn. 14 (528 SE2d 777) (2000); *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997) (negligent misrepresentation).

Once again, precedent of the Supreme Court of the United States is informative. *Blue Chip Stamps* involved an aspect of federal securities law which differed from the common law. However, the

Supreme Court recently adopted common law causation requirements:

> Judicially implied private securities fraud actions resemble in many (but not all) respects common-law deceit and misrepresentation actions. [Cits.] . . . And the common law has long insisted that a plaintiff in such a case show not only that had he known the truth he would not have acted but also that he suffered actual economic loss. [Cits.] . . . Indeed, the Restatement [(Second)] of Torts, in setting forth the judicial consensus, says that a person who "misrepresents the financial condition of a corporation in order to sell its stock" becomes liable to a relying purchaser "for the loss" the purchaser sustains "when the facts . . . become generally known" and "as a result" share value "depreciate(s)." § 548A, Comment b, at 107. Treatise writers, too, have emphasized the need to prove proximate causation. [Cit.]

*Dura Pharmaceuticals v. Broudo*, 544 U. S. 336, 343-344 (II) (A) (125 SC 1627, 161 LE2d 577) (2005). We find "nothing in the *Dura* court's analysis of the common law loss causation requirements that justifies a different standard for plaintiffs' common law fraud claim under [Georgia] law." *Glaser v. Enzo Biochem*, 464 F3d 474, 479 (II) (C) (4th Cir. 2006). "The reasoning of *Dura* . . . is equally applicable to any securities claim, be it statutory or based in the common law, because any such claim for damages requires a showing of proximate cause." *Grand v. Nacchio*, 147 P3d 763, 782 (Ariz. App. 2006).

In answer to the second question, we conclude that, with respect to a tort claim based on misrepresentations or omissions concerning publicly traded securities, a plaintiff at trial has the burden of proving that the truth concealed by the defendant entered the marketplace, thereby precipitating a drop in the price of the security. Having reviewed the already-extensive precedent regarding the parameters of the loss causation standard in *Dura*, we note that, while some courts have held that

> the truth could be revealed by the actual materialization of the concealed risk rather than by a public disclosure that the risk exists, [cit.], any theory of loss causation would still have to identify when the materialization occurred and link it to a corresponding loss.

*In re Williams Securities Litigation - WCG Subclass*, 558 F3d 1130, 1138 (II) (B) (1) (10th Cir. 2009). "Even if the truth has made its way into the marketplace, *Dura* requires that a plaintiff show that it was

this revelation that caused the loss and not one of the 'tangle of factors' that affect price. [Cit.]" *In re Williams Securities Litigation - WCG Subclass*, supra at 1137 (II) (A).

3. Like a majority of courts, the Georgia Court of Appeals has recognized that a stockbroker and his customer have a fiduciary relationship as principal and agent pursuant to OCGA § 23-2-58:

> A stock broker's duty to account to its customer is fiduciary in nature, so that the broker is obligated to exercise the utmost good faith. [Cit.] " 'Requirements of good faith demand that in the principal's interest it is the agent's duty to make known to the principal all material facts which concern the transactions and subject matter of his agency.' (Cit.)" [Cit.]

*Minor v. E.F. Hutton & Co.*, 200 Ga. App. 645, 647 (3) (409 SE2d 262) (1991). See also *E.F. Hutton & Co. v. Weeks*, 166 Ga. App. 443, 445 (1) (304 SE2d 420) (1983). Looking to federal precedent, the Court of Appeals has also determined that a stockbroker has limited fiduciary duties towards a customer who holds a non-discretionary account:

> In considering the extent of a broker's duty to its client, federal cases have drawn a distinction between discretionary and nondiscretionary accounts. In a discretionary account, the broker is authorized to carry out transactions on behalf of its client without prior authorization, while in a nondiscretionary account the broker is only authorized to transact business after receiving authorization from the client. [Cits.] With respect to a nondiscretionary account . . . , the broker owes a number of duties to the client, including the duty to transact business only after receiving prior authorization from the client and the duty not to misrepresent any fact material to the transaction. [Cits.]

*Glisson v. Freeman*, 243 Ga. App. 92, 99 (1) (532 SE2d 442) (2000). We approve of this analysis. However, we further conclude that the fiduciary duties owed by a broker to a customer with a non-discretionary account are not restricted to the actual execution of transactions. The broker will generally have a heightened duty, even to the holder of a non-discretionary account, when recommending an investment which the holder has previously rejected or as to which the broker has a conflict of interest. See *Leib v. Merrill Lynch, Pierce, Fenner & Smith*, 461 FSupp. 951, 953 (II) (E.D. Mich. 1978) (cited in *Glisson*); 5 Law Sec. Reg. § 14.15[2] (6th ed.).

*Certified questions answered. All the Justices concur.*

DECIDED FEBRUARY 8, 2010 —
RECONSIDERATION DENIED MARCH 15, 2010.

*Burton & Armstrong, Joseph J. Burton, Jr., Rosemary S. Armstrong,* for appellant.

*Rogers & Hardin, C. B. Rogers, Brett A. Rogers, Richard H. Sinkfield,* for appellee.

*Cohen, Goldstein, Port & Gottlieb, Robert C. Port, Parker, Hudson, Rainer & Dobbs, David G. Russell,* amici curiae.