Browne v. Thompson, 2011 NCBC 4.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                    SUPERIOR COURT DIVISION

COUNTY OF FORSYTH                          09 CVS 8588

| | |
|---|---|
| ROBERT E. BROWNE, III; SHELBY V.T. CLARK; JEANNE F. CLARK; JOHN H. LOUGHRIDGE, JR.; ELFORD HAMILTON MORGAN; JAME SMITH MORGAN and NORWOOD ROBINSON,<br>               Plaintiffs<br><br>        v.<br><br>G. KENNEDY THOMPSON; THOMAS J. WURTZ; DONALD K. TRUSLOW; ROBERT K. STEEL; WACHOVIA CORPORATION; WELLS FARGO & COMPANY (AS SUCCESSOR-IN-INTEREST TO WACHOVIA CORPORATION); and KPMG, LLP,<br>               Defendants | **ORDER AND OPINION ON DEFENDANTS' MOTIONS TO DISMISS** |

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, now comes before the court upon Defendants G. Kennedy Thompson, Thomas J. Wurtz, Donald K. Truslow, Robert K. Steel and Wells Fargo & Company's (f/k/a Wachovia Corp.) Motion to Dismiss (the "Wachovia Motion") and KPMG, LLP's Motion to Dismiss (the "KPMG Motion") (as appropriate, the Wachovia Motion and the KPMG Motion may be referred to collectively as the "Motions"), pursuant to the provisions of Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, having considered the Motions, the arguments and briefs[1] in support of and in opposition to the Motions, oral argument and appropriate matters of record, CONCLUDES that the Motions should be GRANTED, for the reasons stated herein.

> *Robinson & Lawing LLP, by Norwood Robinson, Esq. and John Halsted Loughridge, Jr., Esq. for Plaintiffs.*
>
> *Robinson, Bradshaw & Hinson, PA, by Robert W. Fuller for Defendants Wachovia Corporation, Wells Fargo & Company, G. Kennedy Thompson, Donald K. Truslow, Thomas J. Wurtz and Robert K. Steel.*
>
> *McGuire Woods, by Douglas W. Ey, Jr. and Mark W. Kinghorn, Esq. for Defendant KPMG, LLP.*

Jolly, Judge.

## I.

## PROCEDURAL HISTORY

[1]     On October 1, 2009, at 3:29 p.m., Robert E. Browne, III, Shelby V.T. Clark, Jeanne F. Clark, John H. Loughridge, Jr., Elford Hamilton Morgan, Jane Smith Morgan and Norwood Robinson (collectively, "Plaintiffs") filed their Complaint[2] in this civil action against Defendants G. Kennedy Thompson ("Thompson"), Thomas J. Wurtz ("Wurtz"), Donald K. Truslow ("Truslow") and Robert K. Steel ("Steel") (collectively, the

---

[1] On August 16, 2010, and August 24, 2010, Defendants filed Notices of Supplemental Authority ("Notices") with this court. On September 13, 2010, Plaintiffs filed a Motion to Submit Response to Defendants' Notices of Supplemental Authority ("Plaintiffs' Authority Motion"). Defendants filed an Opposition to Plaintiffs' Authority Motion, contending that its filing is in violation of Rule 15.9, Amended General Rules of Practice and Procedure for the North Carolina Business Court ("BCR"). BCR 15.9 provides "[A]s an addendum to a brief, response brief, or reply brief, a suggestion of subsequently decided controlling authority, without argument, may be filed at any time prior to the Court's ruling and shall contain only the citation to the case relied upon, if published, or a copy of the opinion if the case is unpublished." The Plaintiffs' Authority Motion does not provide any new subsequently decided authority, but rather asserts arguments why the authority provided by Defendants in their Notices should not apply. It does not conform to the requirements of BCR 15.9. However, the court in its discretion receives the Defendants' Notices and GRANTS the Plaintiffs' Authority Motion. Accordingly, the submission accompanying Plaintiffs' Authority Motion is deemed to be before the court.
[2] Summons was not issued until October 7, 2009.

"Individual Defendants"); Wachovia Corporation ("Wachovia" or the "Company") and Wells Fargo & Company ("Wells Fargo") (the latter two parties, collectively, "Wachovia Defendants") and KPMG, LLP ("KPMG").

[2]     Plaintiffs allege the following claims ("Claims"):  Count I – Negligence, Misrepresentation and Breach of Duty of a Corporate Director and/or Officer (Against the Wachovia Corporate Defendants and the Individual Defendants and Count II – Negligent Misrepresentation (Against the Auditor Defendant, KPMG).

[3]     The Motions seek dismissal of this civil action with regard to all Defendants.

[4]     The Motions have been fully briefed and argued, and are ripe for determination.

II.

FACTUAL BACKGROUND

Among other things, the Complaint alleges that:

Parties

[5]     Collectively, Plaintiffs owned, and continue to own, over 120,000 shares of Wachovia common stock, which has now been converted to Wells Fargo common stock.[3]

[6]     Wachovia is a North Carolina corporation with its principal office located in Charlotte, North Carolina.[4]

---

[3] Compl. ¶ 8A.
[4] *Id.* ¶ 9.

[7]     Wells Fargo is a Delaware corporation, headquartered in San Francisco, California.[5]

[8]     The Individual Defendants currently are or were directors of Wachovia at all relevant times.[6]

[9]     Defendant Thompson served as Wachovia's President and Chief Executive Officer from December 1999, through June 1, 2008.[7]

[10]     Defendant Wurtz served as Wachovia's Senior Executive Vice President and Chief Financial Officer at all relevant times.[8]

[11]     Defendant Truslow served as Wachovia's Chief Risk Officer at all relevant times.[9]

[12]     Defendant Steel, as Thompson's successor, served as Wachovia's President and Chief Executive Officer from July 9, 2008, through December 31, 2008.[10]

[13]     Defendant KPMG is a member firm of KPMG International, an international accounting and auditing firm.[11]  KPMG was responsible for auditing Wachovia's financial statements and internal controls from 2006 through 2008.[12]

Wachovia's Acquisition of Golden West

[14]     The Individual Defendants participated in a fraudulent scheme designed to deceive Plaintiffs and the public as to the financial stability of Wachovia.  Plaintiffs' allegations primarily concern Wachovia's 2006 acquisition of Golden West Financial

---

[5] *Id.* ¶ 10.
[6] *Id.* ¶¶ 13-17.
[7] *Id.* ¶ 13.
[8] *Id.* ¶ 14.
[9] *Id.* ¶ 15.
[10] *Id.* ¶ 16.
[11] *Id.* ¶ 18.
[12] *Id.*

Corporation ("Golden West"), a California-based bank and mortgage lender with a large portfolio of adjustable-rate mortgages known as "Pick-A-Pay" loans.[13]

[15]    Pick-A-Pay loans allow borrowers to select from four different payment options each month.  Borrowers from Golden West who make only the minimum payment, *i.e.* less than the accrued interest, experience "negative amortization," meaning the principal balance of the loan increases, rather than decreases with each minimum payment.[14]  When the principal loan balance on these particular loans reaches more than a certain threshold, typically 110% to 125% of the original loan balance, the loan is reset or "recast" so that the remaining payments will satisfy the loan balance.[15]  As a result, the borrower is forced to make significantly higher payments of principal and interest for a shorter period of time than if the borrower had a conventional mortgage.[16]  The resulting negative amortization could cause a borrower to owe more than the property is worth.[17]

[16]    When Golden West issued Pick-A-Pay loans, it did not rely on a borrower's credit score, but rather only required employment and asset verifications on a case-by-case basis.[18]  Plaintiffs claim Golden West's underwriting standards were "risky" and insufficient to determine adequately the creditworthiness of borrowers.[19]

[17]    As a result of its acquisition of Golden West, Wachovia experienced unprecedented losses from 2006 to 2008.[20]

---

[13] *Id.* ¶¶ 25-44.
[14] *Id.* ¶ 38.
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* ¶ 40.
[19] *Id.*
[20] *Id.* ¶ 133.

[18]     The Individual Defendants, faced with a rapidly deteriorating housing market and strained mortgage system, concealed information regarding underwriting standards, collateral quality and necessary reserves for their loans.[21]  Defendants also concealed problems relating to the value and accounting treatment of Wachovia's holdings in collateralized debt obligations.[22]

[19]     Defendants caused Wachovia to publish allegedly false public SEC filings, press releases and earnings calls regarding the financial strength, stability and liquidity of Wachovia, beginning in January 2007 and concluding in September 2008.[23]

[20]     Offerings materials supplied to the SEC from 2006 through 2008 incorporated by reference Wachovia's financial statements, which were audited by Defendant KPMG.[24]  These financial statements contained untrue statements of material facts and material omissions.[25]  Plaintiffs relied upon the financial statements in deciding whether to retain their Wachovia stock.[26]

[21]     Thompson, Truslow and Wurtz collectively sold over 200,000 shares of their Wachovia stock from 2006 through 2008.[27]  These Defendants sold their shares based on inside information about Wachovia's financial stability not disclosed to Wachovia shareholders or the public.[28]

---

[21] *Id.* ¶¶ 45-47.
[22] *Id.* ¶ 45.
[23] *Id.* ¶ 47.
[24] *Id.* ¶ 53.
[25] *Id.*
[26] *Id.*
[27] *Id.* ¶ 164.
[28] *Id.* ¶¶ 162-63.

[22]     In late September 2008, Wachovia's share prices fell below $1 per share.[29]  Shortly thereafter, Wachovia announced a proposed sale of its banking assets to Citigroup; however, Wachovia ultimately rejected the Citigroup acquisition.[30]

[23]     In late 2008, Wells Fargo consummated a merger with Wachovia and acquired all outstanding shares of Wachovia stock in a stock-for-stock transaction.[31] Wachovia shareholders, including Plaintiffs, received 0.1991 shares of Wells Fargo common stock in exchange for each share of Wachovia common stock they owned.[32]

III.

<u>THE MOTIONS</u>

[24]     The Motions seek dismissal of the Complaint pursuant to Rule 12(b)(6). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.

[25]     In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[26]     A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).  However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a)

---

[29] *Id.* ¶ 154.
[30] *Id.*
[31] *Id.*
[32] *Id.*

does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief.  *Sutton*, 277 N.C. at 108.

A.

The Wachovia Motion

[27]    The Wachovia Motion seeks dismissal of Plaintiffs' Complaint against the Individual Defendants and the Wachovia Defendants on three grounds: (a) North Carolina does not permit direct shareholder claims for losses resulting solely from a drop in the value of stock, such claims being inherently derivative; (b) North Carolina does not recognize "holder" claims and (c) Plaintiffs fail to state viable Claims for negligence, misrepresentation and breach of corporate duties.

1.

Derivative Claims

[28]    The Individual Defendants and the Wachovia Defendants ("Movants") argue that because the injury complained of by Plaintiffs – the substantial drop in the price of Wachovia stock – was felt equally by all Wachovia shareholders, Plaintiffs cannot bring a direct action to recover their losses.[33]  The Movants contend that Plaintiffs' Claims are derivative in nature and should be dismissed because Plaintiffs have not satisfied North Carolina's demand requirement, and therefore do not have standing to pursue this civil action. [34]

[29]    Plaintiffs respond that they suffered direct injuries as a result of the misrepresentations made by the Individual Defendants, which induced Plaintiffs to retain

---

[33] Ind. Defs.' and Wachovia Defs.' Br. Supp. Mot. Dis. 4.
[34] *Id.*

their shares of Wachovia stock.[35]  Plaintiffs further contend that the Individual Defendants, by selling their own shares of Wachovia stock while simultaneously misrepresenting the viability of the Company, breached their duties owed to shareholders.[36]

[30]     Accordingly, the central issue the court must address is whether Plaintiffs may proceed with this lawsuit, which they brought in their individual capacities, or whether the suit may be pursued only by Wells Fargo, as Wachovia's successor in interest.

[31]     A civil action arising from the same alleged facts and circumstances as the instant action was filed in Mecklenburg County on October 1, 2009.  The Mecklenburg County Action is captioned *Cameron M. Harris, et al. v. Wachovia Corporation, et al.*, and designated Mecklenburg County Civil Action No. 09 CVS 25270 ("*Harris*").  The *Harris* action involves the same substantive Rule 12(b)(6) issues as the instant matter, and a parallel Rule 12(b)(6) motion to dismiss was filed by Defendants in *Harris*.  The *Harris* action differs in substance from the instant matter only in that KPMG is not a party Defendant in *Harris*.

[32]     By separate Opinion and Order of even date herewith, this court has ruled upon the Rule 12(b)(6) motion to dismiss in *Harris*.  In that Opinion and Order, the court concluded that the *Harris* Plaintiffs' Claims are derivative and are controlled by the rule set out by the North Carolina Supreme Court in *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658 (1997), to the effect that "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation that result in the

---

[35] Pls.' Resp. Defs.' Mot. Dis. 6.
[36] *Id.* 6-7.

diminution or destruction of the value of their stock." In *Harris,* this court further concluded that Plaintiffs' Claims do not fall within either the "special duty" or "separate injury" recognized exceptions to what has become known as the "*Barger*" rule. Accordingly, the court ruled that the *Harris* Complaint must be dismissed.[37] In the instant action, the court concludes that *Barger* controls. Accordingly, unless the Plaintiffs' Claims fall within either the "special duty" or the "separate injury" exception to *Barger*, they are derivative and Plaintiffs cannot proceed against the Movants.[38]

a.

Special Duty Exception to *Barger*

[33]   To go forward under the "special duty" exception to *Barger*, "the [special] duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual." *Barger*, 346 N.C. at 659 (internal quotations omitted). Here, Plaintiffs have not made an effort to bring themselves within the special duty exception to *Barger*. Rather, they simply state that their "primary claim" is against Defendants for "misrepresentations made to Plaintiffs as *shareholders* . . . ."[39]  Accordingly, Plaintiffs have not met the requirements of the special duty exception to *Barger.*

b.

Separate Injury Exception to *Barger*

[34]   For the "separate injury" exception to *Barger* to apply, the alleged injury must be "peculiar or personal to the shareholder" and "separate and distinct from any damage suffered by the corporation." *Id.* (quoting *Howell v. Fisher*, 49 N.C. App. 488,

---

[37] For further discussion of derivative claims, the *Barger* rule and its exceptions, see the Opinion and Order in *Harris*.

[38] Also instructive and analogous in substance and result, although in the context of a limited partnership, is *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331(2000).

[39] Pls.' Resp. Defs.' Mot. Dis. 7 (emphasis added).

492 (1980). Here, Plaintiffs contend that the Individual Defendants' misrepresentations about the viability of Wachovia caused them to retain their shares, and ultimately caused an injury to them that is personal and independent of any injury suffered by Wachovia.[40] In this regard, the Complaint alleges that the Individual Defendants lied not only to Plaintiffs but to Wachovia's other shareholders, the SEC and the investing public at large.[41]

[35] Plaintiffs' alleged injury, the diminution or destruction of the value of their stock due to the Individual Defendants' misrepresentations of Wachovia's financial status, "is precisely the same injury suffered by the corporation itself." *Barger*, 346 N.C. at 659. Any harm caused by the Individual Defendants was shared by all Wachovia shareholders proportionately to their holdings. *See Arent v. Distrib. Servs., Inc.*, 975 F.2d 1370, 1373 (8th Cir. 1992). Accordingly, Plaintiffs have failed to allege facts sufficient to establish that the injury they complain of is personal or peculiar and distinct from injuries suffered by other shareholders and Wachovia itself. They have not met the requirements of the separate injury exception to *Barger*.

2.

Holder Claims

[36] The Plaintiffs seek damages for the profits they allege they could have realized if they had sold their Wachovia shares before the Wachovia merger with Wells Fargo was announced. As did the Plaintiffs in *Harris*, the Plaintiffs here allege that they would have sold their Wachovia shares at a materially higher price if the Individual Defendants had not wrongfully convinced them to do otherwise. Plaintiffs allege that

---

[40] *Id.* 8
[41] *See, e.g.,* Compl. ¶ 57.

they refrained from selling in reliance upon the misrepresentations and non-disclosures ascribed to the Individual Defendants, and they seek damages as a result.

[37]     Defendants argue that because holder claims are both derivative and highly speculative in nature, North Carolina does not recognize such claims as actionable.[42]  The Plaintiffs argue to the contrary, relying primarily upon *Gilbert v. Bagley*, 492 F. Supp. 714 (M.D.N.C. 1980).[43]  In *Gilbert*, the court was considering, among other things, the issue of whether there existed an individual direct claim by shareholders where it was alleged that officers and directors breach[ed] a fiduciary duty owed to shareholders by maintaining the market price of the company's shares at artificial levels and in issuing false or misleading financial statements. *id.*  In the course of doing so, the court made reference, at least inferentially, to the concept of holder claims, observing in *dicta* that "the shareholder plaintiffs' injury, *i.e.*, *inducement to either hold* or purchase shares in the Company as a result of the alleged scheme is peculiar to them."  *Id.* at 734 (emphasis added).  Plaintiffs present *Gilbert* in response to Defendants' argument that North Carolina has never recognized holder claims, arguing that the *Bagley* court's interpretation of North Carolina law confirms the existence of a holder's right to sue.  The court is forced to disagree.

[38]     Necessary to the court's conclusion in *Gilbert*, and to Plaintiffs' argument here, is the premise that officers and directors of a corporate entity owe a fiduciary duty to shareholders and that a breach of that duty is directly actionable by individual shareholders.  However, as Plaintiffs acknowledge, in 1990 and subsequent to *Gilbert*, the language of the North Carolina Business Corporation Act ("BCA"), G.S. 55-8-30 was

---

[42] For related discussion of holder claims, see *Harris* Opinion and Order.
[43] The *Harris* Plaintiffs did not cite *Gilbert*.

amended by removing previous express language affirming officers' and directors' fiduciary duty to shareholders. Notwithstanding this, the Plaintiffs argue that the statutory change did not abrogate a substantive duty of officers and directors to shareholders the extent contended by Defendants here. While Plaintiffs offer no statutory or case law support for their position, they cite Russell Robinson's treatise on North Carolina corporate law, which they quote as follows: "The elimination of this provision is more procedural than substantive. The drafters recognized that directors have a duty to act for the benefit of all shareholders of the corporation."[44]

[39] On the other hand, Defendants contend that the Plaintiffs have misquoted ROBINSON by omitting a material part of the quoted language. They argue that the full ROBINSON quote stands for exactly the opposite of the Plaintiffs' position, pointing out that the full quote reads:

> The drafters [of the BCA] recognized that directors have a duty to act for the benefit of all shareholders of the corporation, but they *intended to avoid stating a duty owing directly by the directors to the shareholders that might be construed to give shareholders a direct right of action* on claims that should be asserted derivatively.

*Id.* (emphasis added).[45]

[40] In addition to the statutory changes after *Gilbert*, it is clear that the court there was considering the plaintiffs' claims in a purchaser-seller context, which is not the case in the instant matter. In *Gilbert*, the court analyzed the

---

[44] Pls.' Resp. Defs.' Mot. Dis. 8 (quoting Russell M. Robinson, II, ROBINSON ON NORTH CAROLINA CORPORATION LAW, § 14.01 (7th ed.).

[45] Also instructive on this issue is the North Carolina Commentary to G.S. 55-8-30, which states that "[f]ormer G.S. 55-35 provided that officers and directors stand in a fiduciary relation 'to the corporation and to its shareholders.' The drafters decided not to bring forward the words 'and to its shareholders' in order to avoid an interpretation that there is a duty running directly from directors to the share holders that would give shareholders a direct right of action on claims that should be asserted derivatively."

alleged facts under the standards of *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), and held that a purchaser-seller relationship was a requirement for standing to exist under a 17 C.F.R. § 240.10b-5 claim. 492 F. Supp. at 724. Such a relationship is not alleged in the instant matter.

[41]   After due consideration, the court concludes that neither *Gilbert* nor other relevant authority supports Plaintiffs' position. Accordingly, the court concludes that because holder claims are both derivative and highly speculative in nature, North Carolina has not recognized such claims as actionable, and it is unlikely to do so. Further, even if North Carolina were to recognize such claims in limited discrete and narrow fact situations that are specifically and factually pled, the allegations in the Complaint in this civil action as a matter of law are insufficient to meet such a standard.[46]

3.

Conclusion

[42]   The various Claims alleged by Plaintiffs against the Individual Defendants and the Wachovia Defendants seek to recover directly for loss suffered by Plaintiffs but caused by alleged wrongs committed against the Company. The Claims are derivative and rest solely with the Company. Further, to the extent the Claims constitute holder claims, they are not actionable. The respective Claims may not be asserted by Plaintiffs against the Individual Defendants and the Wachovia Defendants by way of this action. Accordingly, the Wachovia Motion should be GRANTED.

---

[46] See *Harris* Opinion and Order, n. 63.

[43]    The court's conclusion that the Claims cannot be asserted by Plaintiffs is dispositive of this civil action with regard to the Individual Defendants and the Wachovia Defendants.  Consequently, further discussion is not necessary with regard to whether Plaintiffs have stated viable Claims for negligence, misrepresentation and breach of corporate duties as to said Defendants.

B.

The KPMG Motion

[44]    KPMG's Motion seeks dismissal of Plaintiffs' Complaint on the ground that Plaintiffs have failed to allege the requisite elements of a claim for negligent misrepresentation.  KPMG contends that Plaintiffs have failed to allege: (a) detrimental reliance on any KPMG statements; (b) that Plaintiffs belong to a "limited group" of persons whom KPMG knew would rely upon its statements and whom KPMG intended to rely and (c) KPMG's audits of Wachovia's financial statements were prepared without reasonable care.[47] It contends such failure is fatal to Plaintiffs' Claims against KPMG.

Negligent Misrepresentation

[45]    The North Carolina Supreme Court has adopted the RESTATEMENT (SECOND) OF TORTS § 552 (1977) (the "Restatement") in determining accountants' liability for negligent misrepresentation.  *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 214 (1988).  Section 552 of the Restatement provides, in relevant part, as follows:

> (1)  One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject

---

[47] Def. KPMG's Br. Supp. Mot. Dis. 2.

to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

RESTATEMENT (SECOND) OF TORTS § 552.

[46]     To state a claim for negligent misrepresentation under North Carolina law, plaintiffs must allege that (a) they justifiably relied (b) to their detriment (c) on information prepared without reasonable care (d) by one who owed the relying party a duty of care.  *Brinkman v. Barrett Kays & Assocs.*, 155 N.C. App. 738, 742 (2003) (internal quotation omitted).

1.

Detrimental Reliance

[47]     As a threshold consideration, KPMG contends that Plaintiffs' Claim against it is fatally defective because Plaintiffs do not allege in their Complaint that they relied on KPMG's audit in a "transaction," as required by Section 552(1) and (2)(b).  Instead, Defendant contends that all times material to this action, the Plaintiffs owned their Wachovia shares and did not sell them; and therefore, as "holders" are unable to meet the "transaction" element that is necessary to support an allegation of detrimental

reliance under Section 552(2)(b).  KPMG argues that Plaintiffs specifically plead themselves out of court with regard to their negligent misrepresentation Claim by alleging that they held the shares rather than engaging in a purchase or sale transaction.  Defendant contends that refraining from selling shares is not a transaction, and that there exist no North Carolina cases to the effect that holding onto shares is equivalent to a transaction for Section 552 purposes.  If Defendants are correct, Plaintiffs' Claim against KPMG would be fatally defective and further analysis would not be necessary.  In substance, Defendant's position is simply another way of arguing that Plaintiff's Claim against KPMG should fail because North Carolina does not recognize "holder" claims in cases such as this.

[48]    In Sections 552(1) and (2), the Restatement requires reliance by the complaining party upon a "transaction."  The Plaintiffs contend that their decisions to hold their Wachovia shares, in the context of this matter, should be considered the equivalent of "transactions" as required by Section 552.  They argue that in today's economic world, the court should recognize "an expanded understanding of the 'transaction' language" in Section 552.[48]

[49]    In North Carolina, it has long been determined that where the language of a particular provision is clear, the court should give that provision its plain meaning. *See State v. Atkins*, 193 N.C. App. 200, 205 (2008) (quoting *Armstrong v. N.C. State Bd. of Dental Examiners*, 129 N.C. App. 153 156 (1998)); *see also City of Lumberton v. U.S. Cold Storage, Inc.*, 178 N.C. App. 305, 311 (2006).  With regard to the plain meaning of "transaction," Webster's Third International Dictionary variously defines

---

[48] Pls.' Resp. Defs.' Mot. Dis. 26.

"transaction" as "an act, process or instance of transacting;" "activity involving two parties . . . reciprocally affecting . . . each other;" "something that is transacted" and "a business deal." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2425-26 (3d ed. 2002).

[50]     The parties have not presented any reported North Carolina case law specifically on point in this regard.  In their opposition to the Motions, Plaintiffs rely primarily upon (a) *Gilbert*, 492 F. Supp. 714 and (b) *Small v. Fritz Cos.*, 65 P.3d 1255 (Cal. 2003).[49]

[51]     With regard to *Gilbert*, the court has concluded that a fair analysis of the case does not support Plaintiffs' position that North Carolina recognizes holder suits. Further, the court in *Gilbert* concluded that a purchaser-seller relationship (as opposed to a unilateral holder setting) was required as a condition precedent to plaintiff's standing to bring suit under federal securities laws.

[52]     *Small* is a California state court case that discusses negligent misrepresentation claims brought under California law by shareholders who refrained from selling their stock.[50]  *Small* does not interpret North Carolina law.  Further, upon close reading, even in the context of recognizing holder claims, this court concludes *Small* is not supportive of Plaintiffs' Claim against KPMG.  There, the California court observed that:

> In a holder's action a plaintiff must allege specific reliance on the defendant's representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale

---

[49] See *Harris* Opinion and Order, n. 63.
[50] California is one of those few jurisdictions that recognizes holder claims, but only if specifically and narrowly pled.  See *Small*, 65 P.3d 1255.

would have taken place. The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations. Plaintiffs who cannot plead with sufficient specificity to show a bona fide claim of actual reliance do not stand out from the mass of stockholders who rely on the market . . . . [S]uch persons cannot bring individual or class actions for fraud or misrepresentation.

*Id.* at 184-85.

[53]     In the Complaint in the instant action, Plaintiffs do not allege any sort of specific reliance such as how many shares they would have sold or when the sale would have taken place.  *See Holmes v. Grubman*, 691 S.E.2d 196, 199 (Ga. 2010). Plaintiffs do not allege specific facts indicating they considered selling their Wachovia stock before the Wells Fargo merger, or that they specifically read and relied upon KPMG's audit opinions.  "[Plaintiffs] must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the [Plaintiffs] actually relied on the misrepresentations."  *Id.* at 200 (internal quotation omitted).  Plaintiffs must allege specific reliance because it "separat[es] plaintiffs who actually and justifiably rel[y] upon the misrepresentations from the general investing public, who, though they did not so rely, suffered the loss due to the decline in share value."  *Id.*

[54]     The Plaintiffs' conclusory allegations in the Complaint against KPMG are not specific enough to defeat a motion to dismiss under the standard articulated in *Small* or other jurisdictions recognizing holder claims. [51]  If Plaintiffs' Complaint against KPMG was before those jurisdictions, it would not pass muster there.

---

[51] The same would hold true in other jurisdictions.  See cases cited in *Harris* Opinion and Order, n. 63.

[55]     In any event, claims for negligent misrepresentation against independent auditors are governed by the North Carolina Supreme Court's decision in *Raritan River,* which clearly determined that such claims are governed by Restatement Section 552. Other cases cited by Plaintiffs do not address claims for negligent misrepresentation against an independent auditor, and are not controlling.  *See Rowan County Bd. of Educ. v. United States Gypsum Co.*, 103 N.C. App. 288 (1991), *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650 (1995).  Further, North Carolina does not recognize holder claims such as those presented here by Plaintiffs.

2.

Conclusion

[56]     Plaintiffs have failed to allege facts sufficient to state a claim for negligent misrepresentation against Defendant KPMG because Plaintiffs have not alleged facts showing they actually and justifiably relied to their detriment upon KPMG's representations set out in its audit opinions.  Accordingly, the KPMG Motion should be GRANTED.

[57]     In view of the above conclusion, further analysis is not necessary with regard to whether Plaintiffs' have sufficiently alleged that (a) they belong to a "limited group" of persons whom KPMG knew would rely upon its statements and whom KPMG intended to rely and (b) KPMG's audits of Wachovia's financial statements were prepared without reasonable care.

NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED that:

[58]     The Wachovia Motion is GRANTED.

[59]     The KPMG Motion is GRANTED.

[60]     This civil action hereby is DISMISSED.

[61]     Taxable costs shall be charged to Plaintiffs.

 This the 23rd day of February, 2011.